## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DAVID GORDON and SAMAYA**
**GORDON, h/w**
**306 Spruce Street**
**Glenolden, PA 19036**

     **v.**

**LM GENERAL INSURANCE CO.**
**175 Berkely Street**
**Boston, MA 02116**

:
:
:
:
:
:
:
:
:
:
:

### CIVIL ACTION - COMPLAINT - NOTICE TO DEFEND
### 1J- BAD FAITH

YOU HAVE BEEN SUED IN COURT. IF YOU WISH TO DEFEND AGAINST THE CLAIMS SET FORTH IN THE FOLLOWING PAGES, YOU MUST TAKE ACTION WITHIN TWENTY (20) DAYS AFTER THIS COMPLAINT AND NOTICE ARE SERVED, BY ENTERING A WRITTEN APPEARANCE PERSONALLY OR BY AN ATTORNEY AND FILING IN WRITING WITH THE COURT YOUR DEFENSES OR OBJECTIONS TO THE CLAIMS SET FORTH AGAINST YOU. YOU ARE WARNED THAT IF YOU FAIL TO DO SO THE CASE MAY PROCEED WITHOUT YOU AND A JUDGMENT MAY BE ENTERED AGAINST YOU BY THE COURT WITHOUT FURTHER NOTICE FOR ANY MONEY CLAIMED OR FOR ANY OTHER CLAIM OR RELIEF REQUESTED BY THE PLAINTIFF. YOU MAY LOSE MONEY OR PROPERTY OR OTHER RIGHTS IMPORTANT TO YOU.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

Philadelphia Bar Association
Lawyer Referral and Information Service
One Reading Center
Philadelphia, Pennsylvania 19107
(215) 238-1701

LE HAN DEMANDADO A USTED EN LA CORTE. SI USTED QUIERE DEFENDERSE DE ESTAS DEMANDAS EXPUESTAS EN LAS PAGINAS SIGUIENTES, USTED TIENE VIENTE (20) DIAS, DE PLAZO AL PARTIR DE LA FECHA DE LA DEMANDA Y LA NOTIFICATION. HACE FALTA ASENTAR UNA COMPARENCIA ESCRITA O EN FORMA ESCRITA SUS DEFENSAS O SUS OBJECIONES A LAS DEMANDAS EN CONTRA DE SU PERSONA. SEA AVISADO QUE SI USTED NO SE DEFIENDE, LA CORTE TOMARA MEDIDAS Y PUEDE CONTINUAR LA DEMANDA EN CONTRA SUYA SIN PREVIO AVISO O NOTIFICACION. ADEMAS, LA CORTE PUEDE DICIDIR A FAVOR DEL DEMANDANTE Y REQUIERE QUE USTED CUMPLA CON TODAS LAS PROVISIONES DE ESTA DEMANDA. USTED PUEDE PERDER DINERO O SUS PROPIEDADES U OTROS DERECHOS IMPORTANTES PARA USTED.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

Asociacion de Liceneados de Filadelphia
Servicio de Referencia e Informacion Legal
One Reading Center
Filadelfia, Pennsylvania 19107
(215) 238-1701

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DAVID GORDON and SAMAYA** <br> **GORDON, h/w** <br> **306 Spruce Street** <br> **Glenolden, PA 19036** <br><br> **v.** <br><br> **LM GENERAL INSURANCE CO.** <br> **175 Berkely Street** <br> **Boston, MA 02116** | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

**CIVIL ACTION - COMPLAINT**
**1J- BAD FAITH**

Plaintiffs, **DAVID GORDON** and **SAMAYA GORDON**, hereby file this Civil Action Complaint and aver as follows:

**BACKGROUND**

1.     At all times relevant hereto, Plaintiffs were named insureds under a policy of insurance with Defendant, **LM GENERAL INSURANCE CO. a/k/a LIBERTY MUTUAL** (hereinafter "**LM**"), Policy #A0S-281-28208549-70 8 9 (hereinafter "the Policy").

2.     The Policy provided for Underinsured Motorist Coverage of $100,000.00.  (A true and correct Policy is attached hereto as Exhibit "A").

3.     Plaintiff, **DAVID GORDON**, was involved in a motor vehicle crash on October 15, 2018 at the intersection of Grays Ferry Avenue and 29th Street, Philadelphia, PA, (hereinafter referred to as "the Accident").

4.      At the time of the Accident, Plaintiff, **DAVID GORDON**, was traveling eastbound on Grays Ferry Avenue entering the intersection with 29th Street when a vehicle operated by a Megan Hill made a left-hand turn without clearance, in violation of the Pennsylvania Motor Vehicle Code, causing the collision.

5.      Megan Hill was insured by Geico Insurance Company, whose policy limits were just $15,000.00.

6.      In light of the clear, undisputed and unrebutted evidence that Megan Hill made an illegal left-hand turn causing the accident, Megan Hill and her insurance carrier, Geico tendered the policy limits of $15,000.00.

7.      As early as December 19, 2018, Plaintiffs put Defendant, **LM,** on notice that they were making an Underinsured Motorist ("UIM") claim under the Policy.

8.      On August 21, 2020, Plaintiffs sent a letter to Defendant, **LM**, advising that the third-party tortfeasor's insurance company Geico, had tendered its entire insurance policy at $15,000.00 with Plaintiffs requesting a "consent to settle" from Defendant, **LM**. (See Exhibit "B").

9.      By letter dated October 2, 2020, Defendant, **LM**, wrote to Plaintiffs stating "Please accept this letter as authorization for you to accept the $15,000.00 as settlement after being made by Geico Insurance Company, on behalf of Megan Hill." (See Exhibit "C")

10.      On January 11, 2021, Plaintiffs sent a letter to Defendant, **LM**, which stated in part as follows:

3

This will serve to formally advise you in your capacity as the adjuster for Liberty Mutual Insurance and its insured, David Gordon, that my client will accept the sum of $100,000.00 in full settlement of his UIM personal injury claim against Liberty Mutual Insurance on satisfactory proof that the liability insurance coverages (including excess policies) for the above incident do not exceed this figure.

As documented in the attached medical records, there is no question that this case has a value far in excess of your insured's $100,000.00 policy limits. Your insured has been diagnosed as having a traumatic brain injury/concussion by his primary care physician, Moss Rehabilitation, as well as a board certified neurologist who was the Chief of Neurology at the VA for over 15 years. The neurologist has diagnosed as follows:

- post-concussive syndrome (mTBI) secondary to closed head injury with persistent post-concussive headaches, dizziness, and photosensitivity/photophobia;

The treating neurologist went on to state:

He has definite limitations in terms of his headaches and photophobia. His dizziness is also problematic. He has been able to maintain his job working as a bus driver but has had to switch to the day shift because of the persistent photophobia and photosensitivity with glare and night.

See report of neurologist attached hereto.

With respect to the mechanism of injury, there is no question that the impact was severe supporting the traumatic brain injury. In fact, airbags deployed striking your insured in the face and head. In fact, your insured was cause to miss 3-1/2 months of work due to the accident-related injuries.

Enclosed please find the following medical specials for David Gordon, regarding the above motor vehicle accident:

- Philadelphia EMS, 10/15/18;
- Hospital of the University of Pennsylvania, ER 10/15/18;
- Katherine Mahon, M.D.;
- Michael Cohen, M.D.;
- Crozer PT/Veronica Hache;
- Dr. Miriam Segal/Moss Rehab

4

This case has a jury verdict potential against Liberty Mutual far in excess of the $100,000.00 total coverage through Liberty Mutual and the underlying insurer, based on the information provided to you. The underlying insurer tendered their policy limits of $15,000.00. Please be advised that this offer of $100,000.00 will remain open until February 11, 2021. Thereafter, **no** offers of settlement within Liberty Mutual's insurance

(<u>See</u> Exhibit "D").

11.     On May 27, 2022, Plaintiffs filed a Civil Action Complaint against Liberty Mutual Insurance in the Court of Common Pleas of Philadelphia, Case ID: 220502605, averring causes of action for bad faith, breach of contract and loss of consortium. (hereinafter the "Underling Complaint".)  (<u>See</u> Exhibit "E".)

12.     Defendant, **LM,** removed that matter to the United States Court for the Eastern District of Pennsylvania under diversity jurisdiction, 28 U.S.C. §1322, 1441, and **1446, and certified the amount of damages exceeded $150,000.00, fifty thousand dollars above the policy of insurance, under the Docket Number 2022-cv-0520**.

13.     Between January 30th and February 1, 2023, a jury trial was tried in the Untied States District Court, Civil Action No. 2022-cv-05020.

14.     On February 1, 2023, a unanimous jury rendered a verdict in favor of Plaintiffs and against Defendants in the total amount of $660,000.00.  (<u>See</u> Exhibit "F").

15.     After the Underlying Complaint was filed and prior to the jury verdict, Defendant, **LM**, filed of record an Offer of Judgment on January 5, 2023 in the amount of $10,000.00, with Defendant, **LM**, writing:

> If this Offer of Judgment is not accepted by Plaintiffs and the judgment finally obtained by Plaintiffs is not more favorable than this Offer of Judgment, Plaintiffs must pay their own costs, including their attorneys' fees, incurred after making this Offer of Judgment, as well as the Defendant's costs as allowed by the law of this District.

(See Exhibit "G".)

16.     During the jury trial under Docket No. 2022-cv-0520 Defendant, **LM,** had no facts or evidence to refute that the tortfeasor, Megan Hill, made an illegal left-hand turn in violation of the Motor Vehicle Code.

17.     Other than speculation, conjecture, innuendo, and unsubstantiated statements from Defendant, **LM**, there was no reasonable credible evidence that Plaintiff, **DAVID GORDON**, was negligent.

18.     With respect to Plaintiffs' claim for damages, it was not until January 25, 2023, five days before the commencement of the jury trial that Defendant, **LM**, served a report from defense forensic expert, Paul Shipkin, M.D.

19.     It was not until Friday, January 27, 2023, the last business day before jury selection that Defendant, **LM**, took the trial testimony of defense forensic expert, Paul Shipkin, M.D.

20.     It was not until January 27, 2023, that Plaintiffs learned through cross-examination of Dr. Shipkin as to his making a living writing reports and testifying for defense lawyers and that he met privately with counsel for Defendant, **LM**, preparing him for his testimony and that he acted with clear bias on behalf of Defendant, **LM**, by ignoring undisputed relevant and critical facts concerning Plaintiff's diagnosis and treatment and acted along with Defendant, **LM,** to mislead the jury.

21.    Defendant, **LM's** bad faith conduct and its frivolous and unfounded bases for not tendering its policy limits continued from the time of the testimony of Dr. Shipkin, through closing arguments during the jury trial.

22.    Plaintiffs' bad faith claim did not become ripe until the unanimous jury rendered its verdict in essence finding that the conduct of Defendant, **LM**, was frivolous and unfounded with it rendered a verdict in the amount of $660,000.00.

23.    Even during the jury trial from January 30, 2023 through February 1, 2023, with the undisputed evidence that the third-party tortfeasor made a left-hand turn in violation of the Motor Vehicle Code causing the accident with evidence that Defendant, **LM's** paid forensic expert was biased with questionable credibility before the jury, Defendant, **LM,** made no reasonable offers prior to the verdict.

24.    The gross verdict in the amount of $660,000.00 was **6,600% above Defendant, LM's Offer of Judgment.**

25.    As set forth herein, the verdict of 6,660% above the last best offer and Offer of Judgment support Plaintiffs' bad faith claim that Defendant, **LM**, acted frivolously and that its refusal to pay the policy limits was unfounded and further supports that Defendant, **LM**, failed to act in good faith and fair dealings with respect to its insureds, David Gordon and Samaya Gordon.

## THE PARTIES AND JURISDICTION

26.    Plaintiff, **DAVID GORDON**, is an adult individual residing at 306 Spruce Street, Glenolden, PA 19036.

27.     Plaintiff, **SAMAYA GORDON**, is an adult individual residing at 306 Spruce Street, Glenolden, PA 19036.

28.     Defendant, **LM GENERAL INSURANCE COMPANY, a/k/a LIBERTY MUTUAL INSURANCE,** (hereinafter **"LM"**) is a corporation or other business entity engaged in the insurance business, which operates in the Commonwealth of Pennsylvania and at all times relevant to this cause of action was authorized and did sell liability insurance policies throughout the Commonwealth of Pennsylvania and which at all times material hereto is amenable to service at 111 South Independence Mall East, Philadelphia, PA 19106.

29.     At all times relevant hereto, said Defendant has engaged in business with in the County of Philadelphia on a regular, systematic, and continuous and substantial basis.

30.     Plaintiffs file this Complaint under diversity jurisdiction, 28 U.S.C. §1332, 1441, and 1446, and certify the amount of damages exceeds $150,0000.

**THE POLICY OF INSURANCE**

31.     Prior to August 15, 2018, Defendant, **LM**, issued a Policy of automobile liability insurance to Plaintiffs, **DAVID GORDON** and **SAMAYA GORDON**. The Policy was effective on all dates hereinafter mentioned.

32.     The aforesaid Policy of automobile insurance provided for payment of Underinsured Motorist Benefits in accordance with the provision of the Pennsylvania Motor Vehicle Financial Responsibility Law.

33.    On or about October 15, 2018, the aforesaid Policy of insurance, including the provisions for payment of Underinsured Motorist Benefits was in full force and effect.

## THE UNDERLYING MOTOR VEHICLE ACCIDENT INJURIES

34.    On or about October 15, 2018, a vehicle owned and operated by Megan Hill ("the tortfeasor") was traveling on Grays Ferry Avenue at its intersection with 29th Street, Philadelphia, PA when she made a left-hand turn against oncoming traffic in violation of the Pennsylvania Motor Vehicle Code, crashing into the vehicle operated by Plaintiff, **DAVID GORDON**, who had a green traffic signal, and who had the right-of-way.

35.    Philadelphia Police Officer, Robert Champion, Badge #277504, investigated the car crash, interviewed Megan Hill, the tortfeasor, interviewed David Gordon, observed physical evidence concerning the happening of the crash and location of the crash, and issued an official Police Report in which he wrote in part:

> Unit #2 (Hill) turned SB from WB Grays Ferry Avenue without
> clearance causing the collision.

36.    Pennsylvania law provides the driver of a vehicle intending to turn left within an intersection or into an alley, private road or driveway shall yield the right-of-way to any vehicle approaching from the opposite direction which is so close as to constitute a hazard. See Title 75, Pa. Code §3322.

37.    As a result of the October 15, 2018 crash, David Gordon's treating physicians, including Dr. Ashu Shu, Dr. Dan Donnelly, Dr. Katherine Mahon, Dr. Michael Martin Cohen, and Dr. Miriam Segal diagnosed David Gordon as suffering an injury to his brain, a concussion, with reported post-concussion syndrom symptomatologies documented in the medical records.

9

## THE UNDERLYING THIRD-PARTY SETTLEMENT

38.     The tortfeasor and her insurance company, Geico Insurance Company, did not dispute liability and, recognizing the value of David Gordon's injuries and damages far exceeding its policy limits, tendered its policy limits of $15,000.00 to Plaintiff.

39.     Defendant, **LM**, as the insurer of Plaintiffs, gave its consent to settle with the tortfeasor via letter dated October 2, 2020.

## THE UIM CLAIM AND LM'S DUTIES AND OBLIGATIONS

40.     As supported by the jury verdict of $660,000.00, Defendant, **LM**, has acted with dishonest purpose and knowingly breached a known duty (i.e. to act in good faith and fair dealing).

41.     At all times relevant hereto, Defendant, **LM,** knew that there was undisputed evidence that the tortfeasor, who was intending to turn left within an intersection, failed to yield the right-of-way to any vehicle approaching from the opposition direction.

42.     At all times relevant hereto, as of January 11, 2021, Defendant, **LM**, knew that the treating primary care physicians, physicians at Moss Rehabilitation, as well as a Board Certified Neurologist who was the Chief of Neurology for the VA for over 15 years diagnosed Plaintiff, **DAVID GORDON**, with post-concussive syndrome (mTBI) secondary to closed-head injury with persistent post-concussive headaches, dizziness, photosensitivity, photophobia with the treating neurologist noting that Plaintiff has definite limitations in terms of headaches, photophobia, dizziness and other sequelae including nauseousness, irritability, inability to control impulses, depression, fatigue, and other accident-related sequelae from a traumatic brain injury.

43.     Without any credible admissible evidence to the contrary, Defendants continued to low ball Plaintiff, forcing Plaintiffs to file a Civil Action Complaint just to recover Underinsured Motorist benefits, which was filed on May 27, 2022.

44.     After removing the Underlying Complaint to the United States District Court for the Eastern District of Pennsylvania, Defendant, **LM**, filed a Motion to Dismiss the Bad Faith Count, and any reference to fiduciary duty.

45.     By Order dated July 28, 2022, the court dismissed Count I of Plaintiffs' Complaint without prejudice to Plaintiffs filing an Amended Complaint possibly pleading a fact basis for their bad faith allegations no later than August 5, 2022.

46.     As it was premature to file a bad faith case until such time as the jury rendered a verdict in excess of the $100,000.00 policy limits, Plaintiffs' claim for bad faith was not ripe.

47.     It was not until Defendant, **LM**, put on its defense as to whether it acted frivolously and whether its assessment was unfounded with respect to its claims handling that Plaintiffs' case became ripe with the unanimous jury verdict which was 6,600% higher than Defendant, **LM's** last offer.

48.     Had the jury verdict had been for the defense or an amount less than $100,000.00, Plaintiff would not have a bad faith claim.

49.     Plaintiffs' claim for bad faith did not become ripe and actionable until there was a jury verdict of a significantly excess verdict.

11

50.    As the February 1, 2023 jury verdict was in the amount of $660,000.00, which is 6,600% higher than the Offer of Judgment filed of record, Plaintiffs now can aver a *prima facie* cause of action for bad faith.

51.    At all times relevant hereto, Defendant, **LM**, engaged in the insurance business for profit.

52.    At all times relevant hereto, Defendant, **LM**, was engaged in the business of selling insurance and insurance policies in the Commonwealth of Pennsylvania, and specifically, did sell the said policy of automobile insurance covering Plaintiffs.

53.    The premium requested by Defendant, **LM**, as payment for said policy was paid in full by Plaintiffs prior to October 15, 2018.

54.    As the insurer of Plaintiffs, Defendant, **LM**, has a contractual and statutory duty towards Plaintiffs with respect to payment of Uninsured Motorist Benefits.

55.    As the insurer of Plaintiffs, Defendant, **LM**, has a contractual and statutory duty toward Plaintiffs to negotiate their claim in good faith in order to arrive at a prompt, fair and equitable settlement.

### SPECIFIC ALLEGATIONS REGARDING UIM CLAIM AND LM'S BAD FAITH HANDLING

56.    Notwithstanding undisputed facts in its file concerning the liability of the tortfeasor, and the medical records documenting that its insured, David Gordon, suffered a traumatic brain injury, Defendant, **LM**, took the position that Plaintiffs' claims had a value less than $10,000.00 as reflected in its Offer of Judgment threatening its insured that if Plaintiffs did not take the $10,000.00, that its insureds would have to pay not only its own

costs and fees, but also the cost of Defendant, **LM**, in defending the Underinsured Motorist Claim.

57.    Quite relevant to these pleadings is the fact that at no time did Defendant, **LM**, ever take the deposition of the tortfeasor, fact witnesses, or obtain any credible evidence to dispute that the tortfeasor was 100% liable.

58.    Quite shockingly, Defendant, **LM**, waited until after the Underling Complaint was filed before it ever retained a forensic defense doctor, Dr. Paul Shipkin, to write a report on the eve of trial.

59.    As supported by the testimony of Dr. Shipkin, Dr. Shipkin was a biased paid witness who works for for-profit companies writing reports and testifying for lawyers.

60.    At all times relevant hereto, Defendant, **LM**, knew that Dr. Shipkin is a biased witness.

61.    At all times relevant hereto, Defendant, **LM**, knew that Dr. Shipkin was ignoring the facts in the medical records of the treating physician which clearly support the diagnosis of a traumatic brain injury, and instead, ignored those facts to reach a biased self-serving opinion on behalf of Defendant, **LM**, which was paying him.

62.    Upon information and belief, Defendant, **LM** and **LIBERTY MUTUAL INSURANCE** routinely hires biased professional witnesses who make a large percentage of their income writing reports to assist insurance companies and insurance defense lawyers in litigation.

63.     During the jury trial in this case, it was discovered that Defendant, **LM**, allegedly was going to call a fact witness to testify at trial whom, Defendant, **LM's** counsel had been in contact with and had been communicating with.

64.     Upon information and belief, there were photographs taken by Defendant, **LM's** witness as well as statements by the witness which were never produced in discovery.

65.     Even after Dr. Shipkin's trial testimony was concluded with there being clear evidence supporting that he was biased and wrote a report "cherry picking" and failing to consider the relevant findings and opinions of the treating physicians, Defendant, **LM**, never increased its offer or reassessed Plaintiffs' claim for settlement purposes.

66.     Even after Defendant, **LM's** fact witness testified, who testified that in light of the accident being over 4-1/2 years ago, that he had difficult time remembering relevant facts, and did not even know that there were three lanes of traffic in the direction that Plaintiff was traveling at the time of the crash, which was most relevant, Defendant, **LM**, still failed to reassess the value of Plaintiffs' claim, nor did they make any offer other than the $10,000.00 Offer of Judgment.

67.     Defendant, **LM**, presented no credible evidence that Plaintiff, **DAVID GORDON**, caused the accident, or was comparatively negligent, as reflected in the unanimous jury verdict.

68.     Defendant, **LM**, presented no credible evidence that Plaintiff did not suffer a traumatic brain injury.

14

69.    In support of the fact that Defendant, **LM**, has acted frivolously and has failed to act in good faith and fair dealings, a unanimous jury found that Defendant, **MEGAN HILL**, was 100% negligent, that Plaintiff, **DAVID GORDON**, was not negligent, and unanimously found that David Gordon sustained a serious impairment of a body function as a result of the October 15, 2018 accident.

70.    As a result of Plaintiffs' UIM claim, Plaintiff is entitled to his economic loss, as well as non-economic loss as the jury rendered a total verdict in the amount of $660,000.00.  (A true and correct copy of the Verdict Sheet is attached hereto as Exhibit "F".

## LM'S KNOWINGLY OR RECKLESSLY
## DISREGARDING ITS LACK OF REASONABLE BASIS

71.    At all times relevant hereto, Defendant, **LM**, by and through its employees and agents, engaged in a policy, practice and pattern to deny Plaintiffs' insurance coverage under the policy of insurance at issue, with money and profits to Defendant, **LM**, as a factor in its decision making.

72.    At all times relevant hereto, Defendant, **LM**, through its ostensible agents, servants, and/or employees, acted to protect the interest and assets of Defendant, **LM**.

73.    At all times relevant hereto, Plaintiffs fully complied with the terms and conditions of the subject policy of insurance, and all conditions precedent to Plaintiffs' right to recover under said policy of insurance have been performed or have occurred.

74.    Defendant, **LM**, refused, without legal justification or cause, to negotiate properly or fairly, and/or to pay Plaintiffs a reasonable and fair sum for the damages suffered as a result of the aforementioned accident and resultant injuries pursuant to the policy of insurance.

75.    As part of the policy, practices and procedure of Defendant, **LM**, to be more profitable, Defendant knowingly refused to pay benefits pursuant to its contract of insurance and statutory obligations, failed to properly settle claims when liability and damages had become reasonably clear, made unreasonably lower offers to its insured and engaged in dilatory tactics to hold on to the insurance proceeds as long as possible, including forcing Plaintiffs to file a lawsuit and to try a lawsuit to verdict in order to obtain the policy limits.

76.    As a result of the serious and permanent injuries suffered by Plaintiff, DAVID GORDON, as well as the claim for Loss of Consortium, by **SAMAYA GORDON**, Plaintiffs demanded the Underinsured Motorist Policy limits for which they have been paying premiums.

77.    Acting with a dishonest purpose and knowingly breaching a duty of good faith and fair dealing, Defendant acted with the motive of self-interest by engaging in improper claims handling, denying benefits under the policy of insurance, "low-balling" Plaintiffs, and engaging in dilatory tactics by engaging in behavior which includes but is not limited to the following:

(a) Failing to make a reasonable offer to settle the Underinsured Motorist Claim prior to forcing Plaintiffs to   try and litigate a jury trial to verdict;

(b) Providing Plaintiff with no reasonable explanation or any reason for not making a reasonable offer to settle;

(c) Repeatedly and needlessly dragging out the process by forcing Plaintiffs to file a lawsuit and forcing Plaintiffs to try a case to verdict simply to obtain the policy limits for which they were entitled; and

(d) Forcing Plaintiffs to litigate reasonable claims which Defendant knowingly and recklessly disregarded.

(e) Threatening Plaintiffs that if they litigated the case to verdict, Plaintiffs may be forced to pay Defendant's litigation costs.

78.    Defendant, **LM**, recklessly disregarded its lack of reasonable basis in failing to pay out Plaintiffs' claim.

79.    Defendant, **LM's** conduct was outrageous and reckless under the circumstances, specifically in light of the following:

(a) There was no dispute as to liability; and

(b) Plaintiff's treating physicians have opined that his injuries were permanent and causally related to the crash at issue which will require life-long medical care.

80.    It is obvious that Defendant, **LM**, acted in reckless disregard of the interests of its insured.

17

81.     As set forth above, Defendant, **LM's** refusal to pay proceeds under the policy of insurance was frivolous and unfounded.

82.     At all times relevant hereto, Defendant, **LM**, acted with a dishonest purpose and knowingly breached a known duty (i.e. to act in good faith and fair dealing) because it was motivated by self-interest.

83.     The conduct of Defendant, **LM**, included but is not limited to the following:

(a)     Negligently, recklessly, carelessly and wantonly failing to negotiate in good faith to settle with its insured;

(b)     Failing to give equal consideration to paying the claim as to not paying the claim;

(c)     Compelling Plaintiffs to institute litigation to obtain policy benefits that Defendant should have paid promptly and without the necessity of litigation;

(d)     dilatory and abusive claims handling;

(e)     Unreasonably evaluating Plaintiffs' claims and failing to fairly negotiate the amount of the claims with Plaintiffs or her representatives;

(f)     Failing to keep Plaintiffs fairly and adequately advised as to the status of the claim;

(g)     Failing to advise Plaintiffs as to the basis or reason for which Defendants failed or refused to pay Plaintiffs' benefits under the policy of insurance;

(h)     Acting unreasonably and unfairly in response to Plaintiffs' claim;

(i)     Failing to properly provide a reasonable factual explanation for the basis of Defendants' actions;

(j)     Conducting unfair and unreasonable investigations of Plaintiffs' claims, including hiring forensic witnesses which they know are biased and will act as a bias self-interested witness on behalf of Defendant;

(k)     Questioning Plaintiffs' credibility without having any factual basis to support same;

(l)     Unreasonably and unfairly withholding policy benefits justly due and owing Plaintiffs;

(m)    Defending this Uninsured Motorist Claim by attacking the good name of its insured without justification;

(n)     Negligently, recklessly, carelessly and wantonly ignoring and disregarding its statutory and contractual duties to Plaintiffs as its insured;

(o)     Negligently, recklessly, carelessly and wantonly failing to comply with the established laws of the Commonwealth of the Pennsylvania and Statutes of the Commonwealth of Pennsylvania in a manner in which they conducted their investigation.

84.     As the insurer of Plaintiffs, **DAVID GORDON** and **SAMAYA GORDON**, Defendants, **LM**, owed contractual and statutory duties to Plaintiffs to negotiate their claims in good faith and to arrive at a prompt, fair and equitable settlement.

85.     Nevertheless, Defendant, **LM**, knowingly and recklessly acted without legal justification or cause when failing to negotiate in good faith and/or to pay Plaintiffs a sum to which Plaintiffs were entitled.

86.    The acts and/or omissions set forth above, constitute reckless and wanton behavior on the part of the Defendant, **LM**.

## COUNT I
## DAVID GORDON AND SAMAYA GORDON v. LM
## STATUTORY BAD FAITH UNDER 42 PA. C.S. §8371, et. seq.

87.    Plaintiffs hereby incorporate by reference paragraphs 1 through 86 of this Complaint as though fully set forth herein at length.

88.    Despite being presented with evidence of permanent injuries from a brain injury which impact Plaintiffs' life every day, Defendant **LM** knowingly failed to reasonably evaluate Plaintiffs' UIM claim, offering only $10,000.00 to resolve the claim.

89.    In making such a lowball offer, Defendant, **LM**, has violated its contractual and/or statutory duties of good faith and fair dealing by acting in bad faith towards Plaintiffs in violation of the policy's implied covenant of good faith and fair dealing, and in specific violation of 42 Pa.C.S. §8371 et seq.

90.    Plaintiffs herein alleged that the acts and/or omissions of Defendant, **LM**, acting individually by and through their agents, servants and employees acting within the course and scope of their employment, as herein above alleged, constitutes conduct and behavior that was reckless, willful, and wanton, which entitles the Plaintiff to punitive damages under the decisional law and statutory law of the Commonwealth of Pennsylvania.

91.     The statute of the Commonwealth of Pennsylvania, known and characterized as the A Bad Faith Statute, Act of February 7, P.L. 11 1990 No. 6 §3, (42 Pa.C.S.A. §8371 Actions On Insurance Policies, sub-chapter G. Special Damages), provides as follows:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith towards the insured, the court may take all of the following actions:
>
> (1)    Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2)    Award punitive damages against the insurer.
>
> (3)    Access court costs and attorney fees against the insurer.

92.     Plaintiffs, **DAVID GORDON** and **SAMAYA GORDON**, herein brings this action for bad faith under and by virtue of the statutes of the Commonwealth of Pennsylvania entitled "Actions on Insurance Policies" 42 Pa. C.S. §8371 *et seq.*, for damages herein above alleged, with interest thereon, compensatory damages, together with punitive damages, and for assessment of court costs and attorneys fees against Defendant, **LM**, as insurer of Plaintiff herein.

93.     Plaintiffs, **DAVID GORDON** and **SAMAYA GORDON**, further brings this action against Defendant, **LM**, acting by and through its agents, servants and employees of Defendant, **LM**, as insurers, for breach of their contractual duties of an insurer in Pennsylvania towards an insured for:

(a)    failing to acknowledge and act promptly upon written and oral communications with respect to claims arising under the insurance policy;

(b)    failing to adopt and implement reasonable standards for the prompt investigation of claims arising under the insurance policy;

(c)    refusing to pay claim without conducting a reasonable investigation based upon all available information;

(d)    failing to affirm or deny coverage of claims within a reasonable investigation based upon all available information;

(e)    not attempting in good faith to effectuate prompt, fair and equitable settlement of claims in which Defendant's liability under the policy has become reasonably clear;

(f)    compelling persons to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts due and ultimately recovered in actions brought by such persons;

(g)    failing in its duties to its insured in violation of its policy of insurance and under the laws of Pennsylvania;

(h)    failing to afford the interest of its insured (the Plaintiff) the same faithful consideration it gives its own interest;

(i)    recklessly failing to make a reasonable offer to settle;

(j)    improperly disregarding the repeated and consistent offers to settle the claims for a fair and reasonable sum; and,

(k)    taking the unreasonable position with respect to contractual rights of the policyholder and acting unreasonably to avoid paying a reasonable sum for Plaintiffs' claims.

(l)    Ignoring the facts in the claims file and forcing its insured to go through the time and expense to file a lawsuit and forcing its insured to go to verdict just for Plaintiffs to obtain insurance proceeds.

94.    As the insurer of Plaintiffs, **DAVID GORDON** and **SAMAYA GORDON**, Defendant, **LM**, owes a fiduciary, contractual and statutory duty to Plaintiff to negotiate her claim in good faith to arrive at a prompt, fair and equitable settlement.

95.    Nevertheless, Defendant, **LM**, knowingly and recklessly acted without legal justification or cause when failing to negotiate in good faith and/or to pay Plaintiff a sum to which Plaintiff was entitled.

96.    At all times relevant hereto, Defendant, **LM**, with a dishonest purpose, knowingly breached a known duty (i.e. to act in good faith and fair dealing) as it was motivated by self-interest.

97.    As a result of the above described conduct, Plaintiff was forced to litigate claims against Defendant, **LM**, forced to incur costs and attorney's fees, and forced to suffer other damages in an exact amount yet to be determined and for which they are entitled to compensatory, consequential, and punitive damages and attorney's fees, as well as interest on the claim and costs, including but not limited to those damages provided by 42 Pa. C.S. §8371.

WHEREFORE, Plaintiffs, **DAVID GORDON** and **SAMAYA GORDON**, demand judgement against Defendant, **LM**, in an amount in excess of $150,000.00, plus interest on the amount of the award for compensatory damages from the date of the claim made by Plaintiffs in an amount equal to the prime rate of interest plus 3%, plus punitive damages, plus reasonable attorney fees, plus costs and such other relief this Court deems proper under 42 Pa. C.S.A. §8371.

 

**Respectfully submitted,**

**PANSINI, MEZROW & DAVIS**

**BY:** **MICHAEL O. PANSINI**
   **MICHAEL O. PANSINI, ESQUIRE**
   **STEVEN M. MEZROW, ESQUIRE**
   **DAVID B. PIZZICA, ESQUIRE**
   **1525 Locust St., 15th Floor**
   **Philadelphia, PA 19102**
   **Attorneys for Plaintiffs**

**Date: February 7, 2023**

25

## VERIFICATION

I,        David Gordon        , state that I am the within named Plaintiff and that

the facts set forth in the foregoing ____Civil Action Complaint____

are true and correct to the best of my knowledge, information and belief; and that this

statement is made subject to the penalties of 18 Pa. C.S.A. Section 4904 relating to

unsworn falsification to authorities.

_____
David Gordon

DATED: __2/7/2023_____

# EXHIBIT "A"



Liberty Mutual Insurance

350 E. 96th Street
Indianapolis, IN 46240

August 11, 2022

Trevor Scott
PO Box 5014
Scranton, PA 18505-5014

| | |
|---|---|
| **Insured Name:** | **Samaya Gordon** |
| | **David Gordon** |
| **Policy Number:** | **AOS28120854970** |
| **Claim ID:** | **038411689** |
| **Date of Loss:** | **10/15/2018** |
| **Effective Date:** | **05/20/2018** |

I hereby certify that the attached is a true and accurate copy of the documents requested for the policy listed above as maintained by the LM General Insurance Company in the usual and customary course of its business.

*Denise Chambers*

Denise Chambers
Policy Copy Support

DC
Enclosures

LMG002



**Questions about your Policy?**
Call 1-610-363-9390 or
1-888-443-7543

| Policy Number:
AOS-281-208549-70 8 9

**Report a Claim:**
1-800-2CLAIMS or
LibertyMutual.com/claims





**ACTION REQUIRED:**
PLEASE REVIEW AND KEEP FOR YOUR RECORDS.

## Policy Declarations
### Total Annual Premium: $8,824.00

Reason for your new declarations page: Policy Change 01

Please refer to the **Change Detail** section for more information.
**Effective date of this change: 05/20/2018**

Your discounts and benefits have been applied. Includes state sales tax and local surcharge where applicable.



### Insurance Information

| Named Insured: | Samaya Gordon
David Gordon | Policy Number: | AOS-281-208549-70 8 9 |
| Mailing Address: | 306 Spruce St
Glenolden PA 19036-1021 | Policy Period: | 02/02/2018-02/02/2019 12:01 a.m.
standard time at the address of the
Named Insured |
| | | Declarations Effective: 05/20/2018 |

#### Vehicles Covered by Your Auto Policy

| | YEAR | MAKE | MODEL | VEHICLE ID NUMBER |
|---|---|---|---|---|
| 1 | 2015 | NISSAN | ROGUE | JN8AS5MV6FW256042 |
| 2 | 2014 | NISSAN | ALTIMA | 1N4AL3AP7EC401386 |

#### Driver Information

| | NAME | STATE | | NAME | STATE |
|---|---|---|---|---|---|
| 1 | Samaya Gordon | PA | 2 | David Gordon | PA |

To ensure proper coverage, please contact us to add drivers not listed above.

### DISCOUNTS AND BENEFITS SECTION

Your discounts and benefits have been applied to your Total Annual  Policy Premium.

#### Vehicle Discounts

| | VEH 1
2015
NISSAN
ROGUE | VEH 2
2014
NISSAN
ALTIMA |
|---|---|---|
| Anti-Theft Device Discount | • | • |
| Vehicle Safety Discount | • | • |
| New-to-Liberty Vehicle Discount | • | • |

LMG003



| Want to Add a Coverage? | Policy Number: | Report a Claim: |  |
|---|---|---|---|
| Call 1-610-363-9390 or 1-888-443-7543 to talk to your agent about the availability of this coverage and whether it meets your needs. | AOS-281-208549-70 8  9 | 1-800-2CLAIMS or LibertyMutual.com/claims | |

DISCOUNTS AND BENEFITS SECTION continued

**Vehicle Discounts** *(continued)*

|  | VEH 1 | VEH 2 |
|---|---|---|
| RightTrack® Discount | • | • |

**Policy Discounts**

| | | |
|---|---|---|
| · Early Shopper Discount | · Paperless Policy Discount | · Multi-Car Discount |
| · Accident Free Discount | · Homeowner Discount | · Violation Free Discount |
| · Multi-Policy Property Discount | · Multi-Policy Umbrella Discount | · Preferred Payment Discount |

**Policy Benefits**

**Accident Forgiveness:** If you remain accident free and violation free, your policy may be eligible to earn Forgiveness in 4 Year(s).

# Coverage Information

Your total annual policy premium for all covered vehicles is shown below. A premium is shown for each type of coverage you have purchased for each vehicle. **Where no premium is shown, you have not purchased the indicated coverage for that vehicle.**

**THIS POLICY COVERS COLLISION DAMAGE TO RENTAL VEHICLES.**

| COVERAGE | LIMITS | | PREMIUM PER VEHICLE | |
|---|---|---|---|---|
| | | | VEH 1 2015 NISSAN ROGUE | VEH 2 2014 NISSAN ALTIMA |
| **A. Liability** | | | | |
| Bodily Injury | $ $ | 250,000 Each Person 500,000 Each Accident | $882 | $919 |
| Property Damage | $ | 100,000 Each Accident | $654 | $621 |
| Limited Tort Option Selected | | | | |
| **C. Uninsured Motorists** | | | | |
| Uninsured Motorists Bodily Injury | $ $ | 100,000 Each Person 300,000 Each Accident | $165 | $236 |
| Limited Tort Option Selected | | | | |
| **Underinsured Motorists** | | | | |
| Underinsured Motorists Bodily Injury | $ $ | 100,000 Each Person 300,000 Each Accident | $437 | $624 |
| Limited Tort Option Selected | | | | |

LMG004



Case 2:23-cv-00493-MAK    Document 1-2    Filed 02/07/23    Page 30 of 105

**Want to Add a Coverage?**
Call 1-610-363-9390 or
1-888-443-7543 to talk to your
agent about the availability of
this coverage and whether it
meets your needs.

**Policy Number:**
AOS-281-208549-70 8 9

**Report a Claim:**
1-800-2CLAIMS or
LibertyMutual.com/claims

## Coverage Information continued

| COVERAGE | LIMITS | PREMIUM PER VEHICLE | |
|---|---|---|---|
| | | VEH 1 2015 NISSAN ROGUE | VEH 2 2014 NISSAN ALTIMA |
| **D. Coverage for Damage to Your Auto** | | | |
| **Collision** | | $1,250 | $1,418 |
| Actual Cash Value Less Deductible Shown Veh 1 $500 | Veh 2 $500 | | |
| **Other Than Collision** | | $314 | $380 |
| Actual Cash Value Less Deductible Shown Veh 1 $500 | Veh 2 $500 | | |
| **First Party Benefits** | | | |
| First Party Benefits 5,000 Medical Expense 1,500 Funeral Expense 0 Income Loss 5,000 Accidental Death | | $293 | $345 |
| Limited Tort Option Selected | | | |
| **Optional Coverages** | | | |
| Towing And Labor Cost Each Disablement Veh 1 $50 | Veh 2 $50 | $24 | $24 |
| Transportation Expenses | $30 Per Day $900 Per Accident | $119 | $119 |
| **Annual Premium Per Vehicle :** | | **$4,138** | **$4,686** |

Premium Adjustment from 05/20/2018 to 02/02/2019

| | | VEH 1 | VEH 2 |
|---|---|---|---|
| | | $148 | $170 |

Total Adjustment: $318.00

**Total Annual Policy Premium: $8,824.00**

LMG005



**Want to Add a Coverage?**
Call 1-610-363-9390 or
1-888-443-7543 to talk to your
agent about the availability of
this coverage and whether it
meets your needs.

**Policy Number:**
AOS-281-208549-70 8  9

**Report a Claim:**
1-800-2CLAIMS or
LibertyMutual.com/claims



## Additional Coverages and Products Available*

We've reviewed your policy and have identified additional optional coverages and products that can add valuable protection. Talk to your agent about purchasing the following coverages and products and whether they meet your needs.

- **Deductible Fund™:** The last thing you want to think about after an accident is your deductible. We'll lower your collision deductible on every car on your policy by $100 each year you keep the fund.
- **Better Car Replacement™:** Totaling your car hurts. We'll make it feel a little better. If your car is totaled, we'll give you the money for a car that's one model year newer with 15,000 fewer miles on it.

*These optional coverages are subject to policy provisions, limitations, and exclusions. Daily limits or a deductible may apply. For a complete explanation, please consult your agent today.

## Additional Information for Vehicles Covered by Your Policy

| Loss Payee(s) | Month/Year Expires |
|---|---|
| VEH 1: POLICE AND FIRE FEDERAL CREDIT UNION | 07/2021 |
| VEH 2: POLICE AND FIRE FEDERAL CREDIT UNION | 03/2021 |

## Change Detail

Changes made to your policy for: Policy Change 01
- Final RightTrack Discount Vehicle 1,2

## Policy Forms and Endorsements: The following forms and endorsements are applicable to your policy.

Uninsured Motorists Coverage - Pennsylvania (Non-Stacked) AS3688 06 16

Underinsured Motorists Coverage - Pennsylvania (Non-Stacked) AS3690 06 16

Pennsylvania First Party Benefits Coverage Endorsement PP 05 51 11 92

Limited Tort Alternative Information Notice AS2108 04 99

Split Underinsured Motorists Limits Pennsylvania (Non-Stacked) PP 04 16 07 90

Split Uninsured Motorists Limits Pennsylvania (Non-Stacked) PP 04 20 07 90

Optional Transportation Expenses Coverage AS2207 02 05

Split Liability Limits PP 03 09 04 86

Nuclear, Bio-Chemical & Mold Exclusion Endorsement AS2221 04 05

Towing and Labor Coverage AS2208 02 05

Coverage For Damage To Your Auto Exclusion Endorsement PP 13 01 12 99

Loss Payable Clause PP 03 05 08 86

LMG006



**Questions about your Policy?**
Call 1-610-363-9390 or
1-888-443-7543

**Policy Number:**
AOS-281-208549-70 8 9

**Report a Claim:**
1-800-2CLAIMS or
LibertyMutual.com/claims



LibertyGuard Auto Policy Declarations provided and underwritten by LM General Insurance Company (a stock insurance company), Boston, MA.

_____
President

_____
Secretary

This policy, including endorsements listed above,
is countersigned by:

_____
Authorized Representative

**LMG007**



# LibertyGuard Auto Policy

Please read your policy and each endorsement carefully.

**To serve you best...**

Liberty Mutual has over 350 service offices throughout the United States and Canada. Please contact your service office shown on your Declarations Page to report losses, or for any changes or questions about your insurance. Payments should be sent to the office indicated on your bill.

**THIS POLICY IS NONASSESSABLE**

Liberty Mutual Insurance Group

AUTO 3075PA 06 16

LMG008

# LIBERTYGUARD AUTO POLICY

## QUICK REFERENCE
## DECLARATIONS PAGE



Your Name and Address
Your Auto or Trailer
Policy Period

Coverages and Amounts of Insurance — Beginning On Page

Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**PART A - LIABILITY COVERAGE**
Insuring Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Supplementary Payments . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Exclusions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Limit of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Out of State Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Financial Responsibility . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Other Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**PART B - MEDICAL PAYMENTS COVERAGE**
Insuring Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
Exclusions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
Limit of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
Other Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**PART C - UNINSURED MOTORISTS COVERAGE**
Insuring Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
Exclusions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
Limit of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
Other Insurance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
Arbitration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**PART D - COVERAGE FOR DAMAGE TO YOUR AUTO**
Insuring Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
Transportation Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . 10
Exclusions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
Limit of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
Payment of Loss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
No Benefit to Bailee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
Other Sources of Recovery . . . . . . . . . . . . . . . . . . . . . . . . 13
Appraisal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**PART E - DUTIES AFTER AN ACCIDENT OR LOSS**
General Duties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
Additional Duties for Uninsured Motorists Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
Additional Duties for Coverage for Damage to Your Auto . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**PART F - GENERAL PROVISIONS**
Bankruptcy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
Changes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
Fraud . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
Legal Action Against Us . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
Our Right To Recover Payment . . . . . . . . . . . . . . . . . . . . . 15
Policy Period And Territory . . . . . . . . . . . . . . . . . . . . . . . . . 15
Termination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
Transfer Of Your Interest In This Policy . . . . . . . . . . . . . . . . 16
Two Or More Auto Policies . . . . . . . . . . . . . . . . . . . . . . . . . 17
**\*MUTUAL POLICY CONDITIONS** . . . . . . . . . . . . . . . . . . . . . . . . 17

\*These conditions apply only if Liberty Mutual Fire Insurance Company is shown in the Declarations as the insurer.

LMG009



## AUTO POLICY

### AGREEMENT

In return for payment of the premium and subject to all the terms of this policy, we agree with you as follows:

### DEFINITIONS

A.  Throughout this policy, "you" and "your" refer to:

   **1.** The "named insured" shown in the Declarations; and

   **2.** The spouse if a resident of the same household.

   **3.** The partner in a civil union, registered domestic partnership or other similar union, with the "named insured" shown on the Declarations, if a resident of the same household.

     The above, only applies if the civil union, registered domestic partnership or other similar union was validly entered into under the laws of any state, municipality, or territory of the United States or any other country.

     If the spouse or partner defined above is no longer a resident in the same household during the policy period or prior to the inception of the policy, the spouse or partner will be considered "you" and "your" under this policy until the earlier of:

     **a.** The end of 90 days following the change of residency;

     **b.** The effective date of another policy listing the spouse or partner defined above as a named insured; or

     **c.** The end of the policy period.

B.  "We," "us" and "our" refer to the Company providing this insurance.

C.  For purposes of this policy, a private passenger type auto shall be deemed to be owned by a person if leased:

   **1.** Under a written agreement to that person; and

   **2.** For a continuous period of at least 6 months.

Other words and phrases are defined. They are in quotation marks or boldfaced when used.

D.  "Bodily injury" means bodily harm, sickness or disease, including death that results.

E.  "Business" includes trade, profession or occupation.

F.  "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.

G.  "Newly acquired auto":

   **1.** "Newly acquired auto" means any of the following types of vehicles you become the owner of during the policy period:

     **a.** A private passenger auto; or

     **b.** A pickup or van, for which no other insurance policy provides coverage, that:

       (1) Has a Gross Vehicle Weight of less than 10,000 lbs.; and

       (2) Is not used for the delivery or transportation of goods and materials unless such use is:

         (a) Incidental to your business of installing, maintaining or repairing furnishings or equipment; or

         (b) For farming or ranching.

     For this definition to apply to a newly acquired auto, which is in addition to the vehicles listed in the Declarations, we must insure all other vehicles owned by you.

   **2.** Coverage for a newly acquired auto is provided as described below. If you ask us to insure a newly acquired auto after a specified time period described below has elapsed, any coverage we provide for a newly acquired auto will begin at the time you request the coverage.

     **a.** For any coverage provided in this policy except Coverage For Damage To Your Auto, a newly acquired auto will have the broadest coverage we now provide for any vehicle shown in the Declarations. Coverage begins on the date you become the owner.

Page 1 of 17



However, for this coverage to apply to a newly acquired auto that is in addition to any vehicle shown in the Declarations, you must ask us to insure it within 30 days after you become the owner.

If a newly acquired auto replaces a vehicle shown in the Declarations, coverage is provided for this vehicle without your having to ask us to insure it.

    b.  Collision Coverage for a newly acquired auto begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

        (1)  30 days after you become the owner if the Declarations indicate that Collision Coverage applies to at least one auto. In this case, the newly acquired auto will have the broadest coverage we now provide for any auto shown in the Declarations.

        (2)  Five days after you become the owner if the Declarations do not indicate that Collision Coverage applies to at least one auto. If you comply with the 5 day requirement and a loss occurred before you asked us to insure the newly acquired auto, a Collision deductible of $500 will apply.

    c.  Other Than Collision Coverage for a newly acquired auto begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

        (1)  30 days after you become the owner if the Declarations indicate that Other Than Collision Coverage applies to at least one auto. In this case, the newly acquired auto will have the broadest coverage we now provide for any auto shown in the Declarations.

        (2)  Five days after you become the owner if the Declarations do not indicate that Other Than Collision Coverage applies to at least one auto. If you comply with the 5 day requirement and a loss occurred before you asked us to insure the newly acquired auto, an Other Than Collision deductible of $500 will apply.

H.  "Noneconomic loss" means pain and suffering and other nonmonetary detriment.

I.  "Occupying" means in, upon, getting in, on, out or off.

J.  "Personal vehicle sharing program" means a legal entity qualified to do "business" in this state and engaged in the "business" of facilitating the sharing of private passenger motor vehicles for noncommercial use by individuals within this state. Private passenger motor vehicle as it relates to "personal vehicle sharing program" means a four wheel passenger or station wagon type motor vehicle insured under an automobile liability insurance policy covering any individuals residing in your household.

K.  "Property damage" means physical injury to, destruction of or loss of use of tangible property.

L.  "Serious injury" means an injury resulting in death, serious impairment of body function or permanent serious disfigurement.

M.  "Trailer" means a vehicle designed to be pulled by a:

    1.  Private passenger auto; or

    2.  Pickup or van.

It also means a farm wagon or farm implement while towed by a vehicle listed in 1. or 2. above.

N.  "Transportation network platform" means an online-enabled application or digital network used to connect passengers with drivers using vehicles for the purpose of providing prearranged transportation services for compensation.

O.  "Your covered auto" means:

    1.  Any vehicle shown in the Declarations.

    2.  A "newly acquired auto".

If the vehicle you acquire replaces one shown in the Declarations, it will have the same coverage as the vehicle it replaced. You must ask us to insure a replacement vehicle within 30 days only if you wish to add or continue Coverage for Damage to Your Auto.

If the vehicle you acquire is in addition to any shown in the Declarations, it will have the broadest coverage we now provide for any vehicle shown in the Declarations.

    3.  Any "trailer" you own.



4. Any auto or "trailer" you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

  a. breakdown;       d. loss; or

  b. repair;           e. destruction.

  c. servicing;

This provision (J.4.) does not apply to Coverage for Damage to Your Auto.

## PART A - LIABILITY COVERAGE

### INSURING AGREEMENT

**A.** We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted. We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

**B.** "Insured" as used in this Part means:

1. You or any "family member" for the ownership, maintenance or use of any auto or "trailer."

2. Any person using "your covered auto" with your express or implied permission. The actual use must be within the scope of that permission.

3. For "your covered auto," any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

4. For any auto or "trailer," other than "your covered auto," any other person or organization but only with respect to legal responsibility for acts or omissions of you or any "family member" for whom coverage is afforded under this Part. This provision (B.4.) applies only if the person or organization does not own or hire that auto or "trailer."

However, for the purposes of this coverage, "insured" does not mean any person who is using "your covered auto" under a "personal vehicle sharing program."

### SUPPLEMENTARY PAYMENTS

In addition to our limit of liability, we will pay on behalf of an "insured:"

1. Up to $250 for the cost of bail bonds required because of an accident, including related traffic law violations. The accident must result in "bodily injury" or "property damage" covered under this policy.

2. Premiums on appeal bonds and bonds to release attachments in any suit we defend.

3. Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage.

4. Up to $50 a day for loss of earnings, but not other income, because of attendance at hearings or trials at our request.

5. Other reasonable expenses incurred at our request.

6. Prejudgment interest awarded against the "insured" on the part of the judgment we pay. Any prejudgment interest awarded against the insured is subject to the applicable Pennsylvania Rules of Civil Procedure.

### EXCLUSIONS

**A.** We do not provide Liability Coverage for any person:

1. Who intentionally causes "bodily injury" or "property damage."

2. For "property damage" to property owned or being transported by that person.

3. For "property damage" to property:

  a. rented to;

  b. used by; or

  c. in the care of;

that person.

This exclusion (A.3.) does not apply to "property damage" to a residence or private garage.



4. For "bodily injury" to an employee of that person during the course of employment. This exclusion (A.4.) does not apply to "bodily injury" to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.

5. For that "insured's" liability arising out of the ownership or operation of a vehicle while it is being used as a public or livery conveyance. This includes but is not limited to any period of time while it is being used by any person who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the vehicle. This exclusion (A.5.) does not apply to a share-the-expense car pool.

6. While employed or otherwise engaged in the "business" of:

   a. selling;
   b. repairing;
   c. servicing;
   d. storing; or
   e. parking;

   vehicles designed for use mainly on public highways. This includes road testing and delivery. This exclusion (A.6.) does not apply to the ownership, maintenance or use of "your covered auto" by:

   a. you;
   b. any "family member;" or
   c. any partner, agent or employee of you or any "family member."

7. Maintaining or using any vehicle while that person is employed or otherwise engaged in any "business" (other than farming or ranching) not described in Exclusion A.6. This exclusion (A.7.) does not apply to the maintenance or use of a:

   a. private passenger auto;
   b. pickup or van that you own; or
   c. "trailer" used with a vehicle described in a. or b. above.

8. Using a vehicle without a reasonable belief that that person is entitled to do so.

9. For "bodily injury" or "property damage" for which that person:

   a. is an insured under a nuclear energy liability policy; or
   b. would be an insured under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.

   A nuclear energy liability policy is a policy issued by any of the following or their successors:

   a. American Nuclear Insurers;
   b. Mutual Atomic Energy Liability Underwriters; or
   c. Nuclear Insurance Association of Canada.

10. For "bodily injury" or "property damage" that results, or may reasonably be expected to result, from the intentional or criminal acts or omissions of an insured.

B. We do not provide Liability Coverage for the ownership, maintenance or use of:

   1. Any motorized vehicle having fewer than four wheels.
   2. Any vehicle, other than "your covered auto," which is:
      a. owned by you; or
      b. furnished or available for your regular use.
   3. Any vehicle, other than "your covered auto," which is:
      a. owned by any "family member;" or
      b. furnished or available for the regular use of any "family member."

      However, this exclusion (B.3.) does not apply to you while you are maintaining or "occupying" any vehicle which is:

      a. owned by a "family member;" or
      b. furnished or available for the regular use of a "family member."
   4. Any vehicle, while being used for:
      a. competing in; or
      b. practicing or preparing for any organized racing, speed, demolition, stunt or performance contest or related activity whether or not for pay.

Page 4 of 17



## LIMIT OF LIABILITY

**A.** The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one auto accident. This is the most we will pay regardless of the number of:

1. "Insureds;"
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the auto accident.

**B.** We will apply the limit of liability to provide any separate limits required by law for bodily injury and property damage liability. However, this provision (B.) will not change our total limit of liability.

## OUT OF STATE COVERAGE

If an auto accident to which this policy applies occurs in any state or province other than the one in which "your covered auto" is principally garaged, we will interpret your policy for that accident as follows:

**A.** If the state or province has:

1. A financial responsibility or similar law specifying limits of liability for "bodily injury" or "property damage" higher than the limit shown in the Declarations, your policy will provide the higher specified limit.
2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

**B.** No one will be entitled to duplicate payments for the same elements of loss.

## FINANCIAL RESPONSIBILITY

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

## OTHER INSURANCE

If there is other applicable liability insurance available any insurance we provide shall be excess over any other applicable liability insurance. If more than one policy applies on an excess basis, we will bear our proportionate share with other collectible liability insurance. However, any insurance we provide for a temporary substitute vehicle provided by a motor vehicle dealer when "your covered auto" is being transported, serviced, repaired or inspected by the motor vehicle dealer, shall be primary.

## PART B - MEDICAL PAYMENTS COVERAGE

### INSURING AGREEMENT

**A.** We will pay "usual and customary charges" incurred for necessary medical and funeral services because of "bodily injury:"

1. Caused by accident; and
2. Sustained by an "insured."

We will pay only those expenses incurred for services rendered within 3 years from the date of the accident.

**B.** "Insured" as used in this Part means:

1. You or any "family member:"
   a. while "occupying;" or
   b. as a pedestrian when struck by;
   a motor vehicle designed for use mainly on public roads or a trailer of any type.
2. Any other person while "occupying" "your covered auto" with your express or implied permission. The actual occupation must be within the scope of that permission.
3. Any other person while "occupying," as a guest, an automobile not owned by you or a family member, while being operated by you or a family member.

However, for the purposes of this coverage, "insured" does not mean any person who is "occupying" or using "your covered auto" under a "personal vehicle sharing program."

**C.** "Usual and customary charges" as used in this Part means:

Page 5 of 17

LMG014



The lowest of the following:

1. The charge billed by the medical provider for covered treatment;
2. The eightieth percentile charge for that covered treatment in the geozip area where the provider is located, as determined through the use of a FAIRHealth or similar database;
3. The amount authorized by a state mandated fee schedule or by another law or regulation; or
4. The amount authorized by a written PPN or PPO agreement to which the Medical Provider is a party.

The "insured" shall not be responsible for payment of any reduction applied by us. If a medical provider disputes an amount paid by us, we will be responsible for resolving such disputes.

## EXCLUSIONS

We do not provide Medical Payments Coverage for any person for "bodily injury:"

1. Sustained while "occupying" any motorized vehicle having fewer than four wheels.
2. Sustained while "occupying" "your covered auto" when it is being used as a public or livery conveyance. This includes but is not limited to any period of time while it is being used by any person who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the vehicle. This exclusion (2.) does not apply to a share-the-expense car pool.
3. Sustained while "occupying" any vehicle located for use as a residence or premises.
4. Occurring during the course of employment if workers' compensation benefits are required or available for the "bodily injury."
5. Sustained while "occupying," or when struck by, any vehicle (other than "your covered auto") which is:
   a. owned by you; or
   b. furnished or available for your regular use.
6. Sustained while "occupying," or when struck by, any vehicle (other than "your covered auto") which is:
   a. owned by any "family member;" or
   b. furnished or available for the regular use of any "family member."
   However, this exclusion (6.) does not apply to you.
7. Sustained while "occupying" a vehicle without a reasonable belief that that person is entitled to do so.
8. Sustained while "occupying" a vehicle when it is being used in the "business" of an "insured." This exclusion (8.) does not apply to "bodily injury" sustained while "occupying" a:
   a. private passenger auto;
   b. pickup or van that you own; or
   c. "trailer" used with a vehicle described in a. or b. above.
9. Caused by or as a consequence of:
   a. discharge of a nuclear weapon (even if accidental);
   b. war (declared or undeclared);
   c. civil war;
   d. insurrection; or
   e. rebellion or revolution.
10. From or as a consequence of the following, whether controlled or uncontrolled or however caused:
    a. nuclear reaction;
    b. radiation; or
    c. radioactive contamination.
11. Sustained while occupying any vehicle while being used for:
    a. competing in; or
    b. practicing or preparing for any organized racing, speed, demolition, stunt or performance contest or related activity whether or not for pay.

## LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for each person injured in any one accident. This is the most we will pay regardless of the number of:

LMG015



1. "Insureds;"
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.

B. Any amounts otherwise payable for expenses under this coverage shall be reduced by any amounts paid or payable for the same expenses under Part A or Part C.

C. No payment will be made unless the injured person or that person's legal representative agrees in writing that any payment shall be applied toward any settlement or judgment that person receives under Part A or Part C.

**OTHER INSURANCE**

If there is other applicable auto medical payments insurance available any insurance we provide shall be excess over any other applicable auto medical payments insurance. If more than one policy applies on an excess basis, we will bear our proportionate share with other collectible auto medical payments insurance.

## PART C - UNINSURED MOTORISTS COVERAGE

**INSURING AGREEMENT**

A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury:"
1. Sustained by an "insured;" and
2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle."

Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

B. "Insured" as used in this Part means:
1. You or any "family member."
2. Any other person "occupying" "your covered auto."
3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

C. "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:
1. To which no bodily injury liability bond or policy applies at the time of the accident.
2. To which a bodily injury liability bond or policy applies at the time of the accident. In this case its limit for bodily injury liability must be less than the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged.
3. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits:
   a. you or any "family member;"
   b. a vehicle which you or any "family member" are "occupying;" or
   c. "your covered auto."
4. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company;
   a. denies coverage; or
   b. is or becomes insolvent.

However, "uninsured motor vehicle" does not include any vehicle or equipment:
1. Owned by or furnished or available for the regular use of you or any "family member."
2. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.
3. Owned by any governmental unit or agency.
4. Operated on rails or crawler treads.
5. Designed mainly for use off public roads while not on public roads.

LMG016



6. While located for use as a residence or premises.

## EXCLUSIONS

**A.** We do not provide Uninsured Motorists Coverage for "bodily injury" sustained by any person:

    1. While "occupying," or when struck by, any motor vehicle owned by you or any "family member" which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

    2. If that person or the legal representative settles the "bodily injury" claim without our consent.

    3. While "occupying" "your covered auto" when it is being used as a public or livery conveyance. This exclusion (A.3.) does not apply to a share-the-expense car pool.

    4. Using a vehicle without a reasonable belief that that person is entitled to do so.

**B.** This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

    1. Workers' compensation law; or

    2. Disability benefits law.

**C.** We do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

## LIMIT OF LIABILITY

**A.** The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:

    1. "Insureds;"

    2. Claims made;

    3. Vehicles or premiums shown in the Declarations; or

    4. Vehicles involved in the accident.

**B.** Any amounts otherwise payable for damages under this coverage shall be reduced by all sums:

    1. Paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A; and

    2. Paid or payable because of the "bodily injury" under any of the following or similar law:

        a. workers' compensation law; or

        b. disability benefits law.

**C.** Any payment under this coverage will reduce any amount that person is entitled to recover for the same damages under Part A.

## OTHER INSURANCE

If there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.

## ARBITRATION

**A.** If we and an "insured" do not agree:

    1. Whether that person is legally entitled to recover damages under this Part; or

    2. As to the amount of damages;

    either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

**B.** Each party will:

    1. Pay the expenses it incurs; and

LMG017



2. Bear the expenses of the third arbitrator equally.

C. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

1. Whether the "insured" is legally entitled to recover damages; and

2. The amount of damages. This applies only if the amount does not exceed the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

## PART D - COVERAGE FOR DAMAGE TO YOUR AUTO

### INSURING AGREEMENT

A. We will pay for direct and accidental loss to "your covered auto" or any "non-owned auto," including their equipment, subject to **Customized Equipment Coverage**, minus any applicable deductible shown in the Declarations. If loss to more than one of "your covered auto" or "non-owned auto" results from the same collision, only the highest applicable deductible will apply. We will pay for loss to "your covered auto" caused by:

1. Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

2. "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto.

If there is a loss to a "non-owned auto," we will provide the broadest coverage applicable to any "your covered auto" shown in the Declarations.

B. "Collision" means the upset of "your covered auto" or a "non-owned auto" or their impact with another vehicle or object.

Loss caused by the following is considered other than "collision:"

1. Missiles or falling objects;

2. Fire;

3. Theft or larceny;

4. Explosion or earthquake;

5. Windstorm;

6. Hail, water or flood;

7. Malicious mischief

8. Riot or Civil Commotion;

9. Contact with bird or animal; or

10. Breakage of glass

If breakage of glass is caused by a "collision," you may elect to have it considered a loss caused by "collision."

C. "Non-owned auto" means:

1. Any private passenger auto, pickup, van or "trailer" not owned by or furnished or available for the regular use of you or any "family member" while in the custody of or being operated by you or any "family member;" or

2. Any auto or "trailer" you do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:

   a. breakdown;      d. loss; or

   b. repair;         e. destruction.

   c. servicing;

LMG018



**CUSTOMIZED EQUIPMENT COVERAGE**

A.  We will pay up to $500 for theft or damage to "customized equipment" if the loss is caused by:

1.  Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

2.  "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto. Payments shall be reduced by the applicable deductible. However, only one deductible will be applied for any one loss. If you or the owner of a "non-owned auto" keeps salvaged material, payments will also be reduced by the salvage value. In no way shall this coverage increase the limit of liability for "your covered auto" or any "non-owned auto".

B.  "Customized equipment" means any parts, equipment and accessories including devices, extensions, furnishings, fixtures, finishings, and other alterations that:

1.  are permanently installed or attached by bolts or brackets;

2.  are removable from a housing unit that is permanently installed inside the auto;

3.  are permanently bonded to the vehicle by an adhesive or welding procedure; or

4.  change the appearance or performance of the vehicle

including but not limited to any additions or alterations to the chassis, engine, exterior or interior of the auto.

This includes but is not limited to ground effects, specialty rims, performance tires, specialty paint or dye, roll bars, running boards, spoilers, special interior or exterior lighting, roof/trunk racks, and high performance engine components. However, such parts, equipment and accessories that were installed by the automobile manufacturer or licensed auto dealer are not considered "customized equipment".

This also includes any electronic equipment that is not necessary for the normal operation of the auto or the monitoring of the auto's operating system that is used solely for the reproduction of recorded material or used for transmitting or receiving audio, visual or data signals. However, such parts, equipment and accessories that were installed by the automobile manufacturer or licensed auto dealer or in a location the automobile manufacturer intended for such equipment, are not considered "customized equipment".

C.  If you have purchased additional coverage for "customized equipment" we will pay up to the amount of coverage you have purchased in addition to the $500 limit provided by the policy. This additional coverage must be shown in the Declarations.

D.  The most we will pay for parts, equipment and accessories that are:

1.  not installed by the auto manufacturer or dealer; and

2.  permanently installed in or upon the auto

is the actual cash value of the vehicle not including such parts, equipment and accessories.

However under no circumstances will we pay more than the limits identified in the declaration.

**TRANSPORTATION EXPENSES**

We will pay up to $30 per day to a maximum of 30 days for any temporary transportation expenses incurred by you. This applies only in the event of the theft of "your covered auto" or "non-owned auto". We will pay only transportation expenses incurred during the period:

1.  Beginning 48 hours after the theft; and

2.  Ending when "your covered auto" is returned to use or we pay for its loss.

**EXCLUSIONS**

We will not pay for:

1.  Loss to "your covered auto" or any "non-owned auto" which occurs while it is being used as a public or livery conveyance. This includes but is not limited to any period of time while it is being used by any person who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the vehicle. This exclusion (1.) does not apply to a share-the-expense car pool.

2.  Damage due and confined to:

a.  wear and tear;

LMG019



b. freezing;

c. mechanical or electrical breakdown or failure; or

d. road damage to tires.

This exclusion (2.) does not apply if the damage results from the total theft of "your covered auto" or any "non-owned auto."

3. Loss due to or as a consequence of:

a. radioactive contamination;

b. discharge of any nuclear weapon (even if accidental);

c. war (declared or undeclared);

d. civil war;

e. insurrection; or

f. rebellion or revolution.

4. We will not pay for loss to equipment that is not permanently installed in or upon "your covered auto" or any "non-owned auto". This consists of any equipment that either is designed for the reproduction of sound or receives or transmits audio, visual or data signals. This includes but is not limited to:

   radios and stereos; tape decks; compact disc players and burners; digital video disc (DVD) players and burners; citizens band radios; scanning monitor receivers; television monitor receivers; global positioning system (GPS) receivers and/or components; video cassette players and recorders; audio cassette recorders; or personal computers, which includes laptops, desktops, and personal digital assistants (PDA) or any other handheld device.

   All accessories used with the above or similar equipment are also excluded.

5. Loss to "your covered auto" or any "non-owned auto" due to destruction or confiscation by governmental or civil authorities because you or any "family member:"

a. engaged in illegal activities; or

b. failed to comply with Environmental Protection Agency or Department of Transportation standards.

This exclusion (5.) does not apply to the interests of Loss Payees in "your covered auto."

6. Loss to a camper body or "trailer" you own which is not shown in the Declarations. This exclusion (6.) does not apply to a camper body or "trailer" you:

a. acquire during the policy period; and

b. ask us to insure within 30 days after you become the owner.

7. Loss to any "non-owned auto" when used by you or any "family member" without a reasonable belief that you or that "family member" are entitled to do so.

8. Loss to:

a. awnings or cabanas; or

b. equipment designed to create additional living facilities.

9. Loss to equipment designed or used for the detection or location of radar.

10. Loss to any custom furnishings or equipment in or upon any pickup or van. Custom furnishings or equipment include but are not limited to:

a. special carpeting and insulation, furniture or bars;

b. facilities for cooking and sleeping;

c. height-extending roofs; or

d. custom murals, paintings or other decals or graphics.

11. Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in the "business" of:

LMG020



| | | |
|---|---|---|
| a. selling; | d. storing; or | |
| b. repairing; | e. parking; | |
| c. servicing; | | |

vehicles designed for use on public highways. This includes road testing and delivery.

12. Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in any "business" not described in exclusion 11. This exclusion (12.) does not apply to the maintenance or use by you or any "family member" of a "non-owned auto" which is a private passenger auto or "trailer."

13. We will not pay for loss to "customized equipment" in excess of what is provided under Customized Equipment Coverage unless additional coverage has been purchased by endorsement and is shown in the Declarations.

14. We will not pay for loss to tapes, records, discs or other media used with any sound reproducing or other electronic equipment.

15. Loss to "your covered auto" or any "non-owned auto" while the car is being used for:

a. competing in; or

b. practicing or preparing for

any organized racing, speed, demolition, stunt or performance contest or related activity whether or not for pay.

16. Loss to "your covered auto" or "non-owned auto" while being used in a "personal vehicle sharing program."

## LIMIT OF LIABILITY

A. At our option, our limit of liability for loss will be the lowest of:

1. The actual cash value of the stolen or damaged property;

2. a. The amount necessary to repair or replace the property;

   b. Determination of the cost of repair or replacement will be based upon one of the following:

   (1) the cost of repair or replacement agreed upon by you and us;

   (2) a competitive bid approved by us; or

   (3) an estimate written based upon the prevailing competitive price. You agree with us that we may include in the estimate parts furnished by the original vehicle manufacturer or parts from other sources including non-original equipment manufacturers. The prevailing competitive price means prices charged by a majority of the repair market in the area where the vehicle is to be repaired as determined by us; or

3. The limit of liability shown in the Declarations.

However, the most we will pay for loss to any "non-owned auto" which is a "trailer" is $500.

B. An adjustment for depreciation and physical condition will be made in determining actual cash value at the time of loss. In this case, the actual cash value consists of the value of the vehicle not including any "customized equipment."

## PAYMENT OF LOSS

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

1. You; or

2. The address shown in this policy.

If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

Page 12 of 17

LMG021



**NO BENEFIT TO BAILEE**

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

**OTHER SOURCES OF RECOVERY**

If other sources of recovery also cover the loss, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a "non-owned auto" shall be excess over any other collectible source of recovery except for a motor vehicle provided by a motor vehicle dealer when an "insured" has custody of or is operating that motor vehicle, while the "insured's" motor vehicle is being transported, serviced, repaired or inspected by a motor vehicle dealer. This exception only applies to the loan of a motor vehicle by a motor vehicle dealer that occurs without financial remuneration in the form of a fee, rental or lease charge paid directly by the "insured" operating the motor vehicle.

Other Sources of Recovery include but are not limited to:

1. Any coverage provided by the owner of the "non-owned auto;"
2. Any other applicable physical damage insurance;
3. Any other source of recovery applicable to the loss.

**APPRAISAL**

A. If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and
2. Bear the expenses of the appraisal and umpire equally.

B. We do not waive any of our rights under this policy by agreeing to an appraisal.

## PART E - DUTIES AFTER AN ACCIDENT OR LOSS

If an accident or loss occurs, the following must be done for the terms of the policy to apply:

A. We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

B. A person seeking any coverage must:

1. Cooperate with us in the investigation, settlement or defense of any claim or suit. This includes, but is not limited to, allowing us to inspect damage to a vehicle covered by this policy.
2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.
3. Submit, as often as we reasonably require, within 30 days of our request:
   a. to examinations by physicians we select under terms we require. We will pay for these exams.
   b. to interviews and recorded statements without the need for us to conduct an examination under oath.
   c. to examination under oath and subscribe the same.
4. Authorize us to obtain, within 30 days of our request:
   a. medical reports; and
   b. other pertinent records, including but not limited to, information contained in or transmitted by any device located in or on the motor vehicle.
5. Submit a proof of loss when required by us within 30 days of our request.

C. A person seeking Uninsured Motorists Coverage must also:

1. Promptly notify the police if a hit-and-run driver is involved.

LMG022



2. Promptly send us copies of the legal papers if a suit is brought.

D. A person seeking Coverage for Damage to Your Auto must also:

1. Take reasonable steps after loss to protect "your covered auto" or any "non-owned auto" and their equipment from further loss. We will pay reasonable expenses incurred to do this.

2. Promptly notify the police if "your covered auto" or any "non-owned auto" is stolen.

3. Permit us to inspect and appraise the damaged property before its repair or disposal.

## PART F - GENERAL PROVISIONS

### BANKRUPTCY

Bankruptcy or insolvency of the "insured" shall not relieve us of any obligations under this policy.

### CHANGES

A. This policy, your Declarations page and endorsements issued by us to this policy contain all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

B. The premium for your policy is based on information we have received from you or other sources. You agree to cooperate with us in determining if this information is correct and complete and you will notify us if it changes. If this information is incorrect, incomplete, or changes, we will adjust your premium during the policy term or take other appropriate action based upon the corrected, completed or changed information. Changes during the policy term that will result in a premium increase or decrease during the policy term include, but are not limited to, changes in:

1. The number, type or use classification of insured vehicles;

2. Operators using insured vehicles, including newly licensed "family member" drivers and any household members that have licenses;

3. The location where your vehicle is principally garaged;

4. Customized equipment or parts.

5. The persons who regularly operate a covered auto.

You also agree to disclose all licensed drivers residing in your household.

If a change resulting from A. or B. requires a premium adjustment, we will make the premium adjustment in accordance with our manual rules.

C. If we make a change which broadens coverage under this edition of your policy without additional premium charge, that change will automatically apply to your policy as of the date we implement the change in your state. This paragraph (C.) does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of your policy; or

2. An Amendatory Endorsement.

### FRAUD

This policy was issued in reliance upon the information provided on your application. Any changes we make at your request to this policy after inception will be made in reliance upon information you provide. We may void this policy if you or an "insured" have concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, at the time application was made, at the time changes were requested, or any time during the policy period.

We may void this policy and deny coverage for an accident or loss if you or an "insured" have concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.

Page 14 of 17

LMG023



We may void this policy or deny coverage for fraud or material misrepresentation even after the occurrence of an accident or loss. This means we will not be liable for any claims or damages which would otherwise be covered. If we make a payment, we may request that you reimburse us. If so requested, you must reimburse us for any payments we may have already made.

**LEGAL ACTION AGAINST US**

A. No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under Part A, no legal action may be brought against us until:

   1. We agree in writing that the "insured" has an obligation to pay; or

   2. The amount of that obligation has been finally determined by judgment after trial.

B. No person or organization has any right under this policy to bring us into any action to determine the liability of an "insured."

**OUR RIGHT TO RECOVER PAYMENT**

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

   1. Whatever is necessary to enable us to exercise our rights; and

   2. Nothing after loss to prejudice them.

   However, our rights in this paragraph (A.) do not apply under Part D, against any person using "your covered auto" with a reasonable belief that that person is entitled to do so.

B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

   1. Hold in trust for us the proceeds of the recovery; and

   2. Reimburse us to the extent of our payment less reasonable attorney's fees, costs and expenses incurred by that person in our collecting our share of the recovery.

**POLICY PERIOD AND TERRITORY**

A. This policy applies only to accidents and losses which occur:

   1. During the policy period as shown in the Declarations; and

   2. Within the policy territory.

B. The policy territory is:

   1. The United States of America, its territories or possessions;

   2. Puerto Rico; or

   3. Canada.

   This policy also applies to loss to, or accidents involving, "your covered auto" while being transported between their ports.

**TERMINATION**

A. **Cancellation.** This policy may be cancelled during the policy period as follows:

   1. The named insured shown in the Declarations may cancel by:

     a. returning this policy to us; or

     b. giving us advance written notice of the date cancellation is to take effect.

   2. We may cancel by mailing to the named insured shown in the Declarations at the address shown in this policy:

     a. at least 15 days notice of cancellation:

       (1) if notice is effective within the first 60 days this policy is in effect and this is not a renewal or continuation policy;

Page 15 of 17

LMG024



    (2) for nonpayment of premium;

    (3) If the driver's license of the named insured shown in the Declarations has been suspended or revoked after the effective date if this policy has been in effect less than one year; or if the policy has been in effect longer than one year, since the last anniversary of the original effective date; or

  b. at least 60 days notice if the policy was obtained through material misrepresentation.

Our right to cancel this policy is subject to the limitations contained in the applicable Pennsylvania Statutes.

**B. Nonrenewal.** If we decide not to renew or continue this policy, we will mail notice to the named insured shown in the Declarations at the address shown in this policy:

  1. At least 15 days notice before the end of the policy period:

    a. For nonpayment of premium; or

    b. If the driver's license of the named insured shown in the Declarations has been suspended or revoked after the effective date if this policy has been in effect less than one year; or if the policy has been in effect longer than one year, since the last anniversary of the original effective date.

  2. At least 60 days notice before the end of the policy period in all other cases.

However, our right to non-renew the policy is subject to the limitations contained in the applicable Pennsylvania Statutes.

**C. Automatic Termination.** If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

**D. Other Termination Provisions.**

  1. We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

  2. If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.

  3. The effective date of cancellation stated in the notice shall become the end of the policy period.

**TRANSFER OF YOUR INTEREST IN THIS POLICY**

**A.** Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations becomes deceased, coverage will be provided for:

  1. The surviving spouse or partner in a civil union, registered domestic partnership or other similar union, if a resident of the same household at the time of death. Coverage applies to the spouse or partner as set forth herein, as if a named insured shown in the Declarations; and

  2. The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with regard to the representative's legal responsibility to maintain or use "your covered auto."

Section 1. only applies if the civil union, registered domestic partnership or other similar union is validly entered into under the laws of any state, municipality, or territory of the United States or any other country.

**B.** Coverage will only be provided until the end of the policy period.

**CONSTITUTIONALITY CLAUSE**

The premium for, and the coverages of, this policy have been established in reliance upon the provisions of the Pennsylvania Motor Vehicle Financial Responsibility Law. In the event a court, from which there is no appeal, declares or enters a judgment the affect of which is to render the provisions of such statute invalid or unenforceable in whole or part, we will have the right to recomputed the premium payable for the policy and void or amend the provisions of the policy, subject to the approval of the Insurance Commissioner.



**DUTY TO REPORT CHANGES**

You must promptly report to us all changes, including additions and deletions, in policy information. Further, you must report to us certain changes no later than 30 days after the change occurs. These are changes to:

1. your residence address;
2. operators using insured vehicles, including newly licensed "family member" drivers and any household members that have licenses;
3. the location where your vehicle is principally garaged;
4. the persons who regularly operate a covered auto;
5. the driver's license or operator's permit status of you, a relative, or a resident of your household.

**TWO OR MORE AUTO POLICIES**

If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

**\*MUTUAL POLICY CONDITIONS**

You are a member of the Liberty Mutual Fire Insurance Company while this policy is in force. Membership entitles you to vote in person or by proxy at meetings of the company. The Annual Meeting is in Boston, Massachusetts, on the second Wednesday in April each year at 11 o'clock in the morning.

Also, as a member, you will receive any dividends declared on this policy by the Directors.

This policy is classified in Dividend Class IV-Automobile.

This policy has been signed by our President and Secretary at Boston, Massachusetts, and countersigned on the Declarations Page by an authorized representative.

\*These conditions apply only if Liberty Mutual Fire Insurance Company is shown in the Declarations as the insurer.

**PRESIDENT**                                                    **SECRETARY**

Includes Copyrighted material of Insurance Services Office, Inc.,
with its permission
Copyright, Insurance Services Office, Inc., 1988

LMG026



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**UNINSURED MOTORISTS COVERAGE - PENNSYLVANIA (NON-STACKED)**          AS 3688 06 16

Part **C** - Uninsured Motorists Coverage is replaced in its entirety by the following:

SCHEDULE

| UNINSURED MOTORISTS COVERAGE | | |
|---|---|---|
| Description of Vehicle | Limit of Liability | Premium |
| _____ | $ _____ | $ _____ |
| _____ | $ _____ | $ _____ |
| _____ | $ _____ | $ _____ |

**INSURING AGREEMENT**

**A.** We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury":

1. Sustained by an "insured"; and
2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle".

No judgment for damages arising out of a suit brought against the owner or operator of an "uninsured motor vehicle" is binding on us unless we:

1. Received reasonable notice of the pendency of the suit resulting in the judgment; and
2. Had a reasonable opportunity to protect our interests in the suit.

**B.** "Insured" as used in this endorsement means:

1. You or any "family member".
2. Any other person "occupying":
   a. "Your covered auto" with your express or implied permission. The actual occupation must be within the scope of that permission; or
   b. Any other auto operated by you.
3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

However, for the purposes of this coverage, "insured" does not mean any person who is occupying or using "your covered auto" under a "personal vehicle sharing program."

**C.** "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

1. To which no bodily injury liability bond or policy applies at the time of the accident
2. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits or which causes an accident resulting in "bodily injury" without hitting:
   a. You or any "family member";
   b. A vehicle which you or any "family member" are "occupying"; or
   c. "Your covered auto".
   If there is no contact with the hit-and-run vehicle, the facts of the accident must be proved.
3. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:
   a. Denies coverage; or
   b. Is or becomes:
      (1) Insolvent; or
      (2) Involved in insolvency proceedings.

However, "uninsured motor vehicle" does not include any vehicle or equipment:

1. Owned by or furnished for the regular use of you or any "family member".
2. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.
3. Operated on rails or crawler treads.
4. Designed mainly for use off public roads while not on public roads.
5. While located for use as a residence or premises.

Page 1 of 3

**LMG027**



AS 3688 06 16

## EXCLUSIONS

A. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained:

1. By an "insured", as defined in this endorsement, while using, "occupying", or when struck by, any motor vehicle owned by you or a "family member", which is not insured for Uninsured Motorist Coverage under this policy. This includes a trailer of any type used with that vehicle.

2. By an "insured", as defined in this endorsement, while using, "occupying", or when struck by, any non-owned motor vehicle that is furnished or made available for your regular use, or the regular use of a "family member", which is not insured for Uninsured Motorist Coverage under this policy. This includes a trailer of any type used with that vehicle.

B. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained by any person:

1. If that person or the legal representative settles the bodily injury claim without our consent. However, this exclusion (B.1.) does not apply if such settlement does not adversely affect our rights.

2. While "occupying" "your covered auto" when it is being used as a public or livery conveyance. This includes but is not limited to any period of time while it is being used by any person who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the vehicle. This exclusion (B.2) does not apply to a share-the-expense car pool.

3. Using a vehicle without a reasonable belief that that person is entitled to do so.

C. We do not provide Uninsured Motorists Coverage for "non-economic loss" sustained by any person to whom the limited tort alternative applies, resulting from "bodily injury" caused by an accident involving an "uninsured motor vehicle", unless the "bodily injury" sustained is a "serious injury".

This exclusion (C.) does not apply if that "insured" is injured while "occupying" a motor vehicle insured under a commercial motor vehicle insurance policy.

D. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any disability benefits or similar law, except a workers' compensation law.

E. We do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

F. We do not provide Uninsured Motorists Coverage for any person for "bodily injury" or "property damage" that results, or may reasonably be expected to result, from the intentional or criminal acts or omissions of an insured.

## LIMIT OF LIABILITY

A. The limit of liability shown in the Schedule or in the Declarations for Uninsured Motorists Coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:

1. "Insureds";
2. Claims made;
3. Vehicles or premiums shown in the Schedule or in the Declarations; or
4. Vehicles involved in the accident.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part **A** or Part **B** of this policy; or
2. Any Underinsured Motorists Coverage provided by this policy.

C. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible. This includes all payments made to an "insured's" attorney either directly or as part of the payment made to the "insured".

D. We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any disability benefits or similar law, except a workers' compensation law.

## OTHER INSURANCE

If there is other applicable similar insurance available under more than one policy or provision of coverage:

LMG028



AS 3688 06 16

The following priorities of recovery apply:

**First**  The Uninsured Motorists Coverage applicable to the vehicle the "insured" was "occupying" at the time of the accident.

**Second**  The policy affording Uninsured Motorists Coverage to the "insured" as a named insured or family member.

1. When there is applicable insurance available under the First priority:
   a. The limit of liability applicable to the vehicle the "insured" was "occupying", under the policy in the First priority, shall first be exhausted; and
   b. The maximum recovery under all policies in the Second priority may equal but not exceed the highest applicable limit of liability for Uninsured Motorist Coverage for any one vehicle under any one policy providing coverage to you or any "family member".

2. When there is no applicable insurance available under the First priority, the maximum recovery under all policies in the Second priority shall not exceed the highest applicable limit for any one vehicle under any one policy.

If two or more policies have equal priority, the insurer against whom the claim is first made shall process and pay the claim as if wholly responsible for all insurers with equal priority. The insurer is thereafter entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim.

**LAWSUITS AGAINST US**

You must comply with the terms of the policy before you may sue us. Suit must be brought in a court of competent jurisdiction in the county and state of your legal domicile at the time of the accident.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1994

LMG029



THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**UNDERINSURED MOTORISTS COVERAGE - PENNSYLVANIA (NON-STACKED)**          **AS 3690 06 16**

With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

### SCHEDULE

| UNDERINSURED MOTORISTS COVERAGE | | |
|---|---|---|
| Description of Vehicle | Limit of Liability | Premium |
| _____ | $_____ | $_____ |
| _____ | $_____ | $_____ |
| _____ | $_____ | $_____ |

**INSURING AGREEMENT**

**A.** We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle" because of "bodily injury":

1. Sustained by an "insured"; and
2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "underinsured motor vehicle".

We will pay under this coverage only if **1.** or **2.** below applies:

1. The limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements; or
2. A tentative settlement has been made between an "insured" and the insurer of the "underinsured motor vehicle" and we:
   a. Have been given prompt written notice of such tentative settlement; and
   b. Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

No judgment for damages arising out of a suit brought against the owner or operator of an "underinsured motor vehicle" is binding on us unless we:

1. Received reasonable notice of the pendency of the suit resulting in the judgment; and
2. Had a reasonable opportunity to protect our interests in the suit.

**B.** "Insured" as used in this endorsement means:

1. You or any "family member".
2. Any other person "occupying":
   a. "Your covered auto" with your express or implied permission. The actual occupation must be within the scope of that permission; or
   b. Any other auto operated by you.
3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in **1.** or **2.** above.

   However, for the purposes of this coverage, "insured" does not mean any person who is occupying or using "your covered auto" under a "personal vehicle sharing program."

**C.** "Underinsured motor vehicle" means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but the amount paid for "bodily injury" under that bond or policy to an "insured" is not enough to pay the full amount the "insured" is legally entitled to recover as damages.

However, "underinsured motor vehicle" does not include any vehicle or equipment:

1. For which liability coverage is provided under Part **A** of this policy.
2. Operated on rails or crawler treads.
3. Designed mainly for use off public roads while not on public roads.
4. While located for use as a residence or premises.

**EXCLUSIONS**

**A.** We do not provide Underinsured Motorists Coverage for "bodily injury" sustained:

1. By an "insured", as defined in this endorsement, while using, "occupying", or when struck by, any motor vehicle

Page 1 of 3

LMG030



AS 3690 06 16

owned by you or a "family member", which is not insured for Underinsured Motorists Coverage under this policy. This includes a trailer of any type used with that vehicle.

2. By an "insured", as defined in this endorsement, while using, "occupying", or when struck by, any non-owned motor vehicle that is furnished or made available for your regular use, or the regular use of a "family member", which is not insured for Underinsured Motorists Coverage under this policy. This includes a trailer of any type used with that vehicle.

B. We do not provide Underinsured Motorists Coverage for "bodily injury" sustained by any person:

1. While "occupying" "your covered auto" when it is being used as a public or livery conveyance. This includes but is not limited to any period of time while it is being used by any person who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the vehicle. This exclusion (B.1.) does not apply to a share-the-expense car pool.

2. Using a vehicle without a reasonable belief that that person is entitled to do so.

C. We do not provide Underinsured Motorists Coverage for "noneconomic loss" sustained by any person to whom the limited tort alternative applies, resulting from "bodily injury" caused by an accident involving an "underinsured motor vehicle", unless the "bodily injury" sustained is a "serious injury".

This exclusion (C.) does not apply if that "insured" is injured while "occupying" a motor vehicle insured under a commercial motor vehicle insurance policy.

D. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any disability benefits or similar law, except a workers' compensation law.

E. We do not provide Underinsured Motorists Coverage for punitive or exemplary damages.

F. We do not provide Underinsured Motorists Coverage for any person for "bodily injury" or "property damage" that results, or may reasonably be expected to result, from the intentional or criminal acts or omissions of an insured.

**LIMIT OF LIABILITY**

A. The limit of liability shown in the Schedule or in the Declarations for Underinsured Motorists Coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Schedule or in the Declarations; or

4. Vehicles involved in the accident.

B. The damages payable under this coverage shall be reduced by all sums paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid for an "insured's" attorney either directly or as part of the amount paid to the "insured". It also includes all sums paid under Part A of this policy.

C. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part A, Part B or Part C of this policy.

D. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

E. We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any disability benefits or similar law, except a workers' compensation law.

**OTHER INSURANCE**

If there is other applicable similar insurance available under more than one policy or provision of coverage:

The following priorities of recovery apply:

**First** The Underinsured Motorists Coverage applicable to the vehicle the "insured" was "occupying" at the time of the accident.

**Second** The policy affording Underinsured Motorists Coverage to the "insured" as a named insured or family member.

1. When there is applicable insurance available under the First priority:

a. The limit of liability applicable to the vehicle the "insured" was "occupying", under the policy in the First priority, shall first be exhausted; and

LMG031



AS 3690 06 16

b. The maximum recovery under all policies in the Second priority may equal but not exceed the highest applicable limit of liability for Underinsured Motorists Coverage for any one vehicle under any one policy providing coverage to you or any "family member".

2. When there is no applicable insurance available under the First priority, the maximum recovery under all policies in the Second priority shall not exceed the highest applicable limit for any one vehicle under any one policy.

If two or more policies have equal priority, the insurer against whom the claim is first made shall process and pay the claim as if wholly responsible for all insurers with equal priority. The insurer is thereafter entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim.

**LAWSUITS AGAINST US**

You must comply with the terms of the policy before you may sue us. Suit must be brought in a court of competent jurisdiction in the county and state of your legal domicile at the time of the accident.

**ADDITIONAL DUTIES**

A person seeking Underinsured Motorists Coverage must also promptly:

1. Send us copies of the legal papers if a suit is brought; and

2. Notify us in writing of a tentative settlement between the "insured" and the insurer of the "underinsured motor vehicle" and allow us 30 days to advance payment to that "insured" in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such "underinsured motor vehicle".

**PART F - GENERAL PROVISIONS**

The following is added to the Our Right To Recover Payment provision of Part F:

**OUR RIGHT TO RECOVER PAYMENT**

Our rights do not apply under paragraph **A.** with respect to Underinsured Motorists Coverage if we:

1. Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of an "underinsured motor vehicle"; and

2. Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

1. That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Underinsured Motorists Coverage; and

2. We also have a right to recover the advanced payment.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1994

Page 3 of 3

LMG032

POLICY NUMBER:



**FIRST PARTY BENEFITS COVERAGE - PENNSYLVANIA**

PERSONAL AUTO
PP 05 51 11 92

With respect to coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

SCHEDULE

| BASIC FIRST PARTY BENEFIT | |
|---|---|
| **Benefit** | **Limit Of Liability** |
| Medical Expenses | $5,000 |
| If indicated below or in the Declarations, the following options apply instead of the Basic First Party Benefit: | |
| ☐ **Added First Party Benefits** | |
| **Benefits** | **Limit Of Liability** |
| Medical Expenses | $_____ |
| Work Loss | $_____ subject to a maximum of $_____ per month |
| Funeral Expenses | $_____ |
| Accidental Death | $_____ |
| ☐ **Combination First Party Benefits** | |
| **Benefits** | **Limit Of Liability** |
| Medical Expenses | No specific dollar amount |
| Work Loss | No specific dollar amount |
| Funeral Expenses | $2,500 |
| Accidental Death | $_____ |
| Maximum Limit of Liability for the Total of All Combination First Party Benefits | $_____ |
| Note: If Added First Party Benefits or Combination First Party Benefits are not shown as applicable in the Schedule or Declarations, only the Basic First Party Benefit applies. | |

**I. DEFINITIONS**

The Definitions section is amended as follows:

A. "The Act" refers to the Pennsylvania Motor Vehicle Financial Responsibility Law.

B. The following definitions are replaced:

1. "Bodily injury" means accidental bodily harm to a person and that person's resulting illness, disease or death.

2. "Your covered auto" means a "motor vehicle":

a. To which Part **A** of this policy applies and for which a specific premium is charged; and

b. For which First Party Benefits Coverage required by the Act is maintained.

C. The following definition is added:

"Motor vehicle" means a self-propelled vehicle operated or designed for use upon public roads. However, "motor vehicle" does not include a vehicle operated:

1. By muscular power; or

2. On rails or tracks.

D. "Insured" as used in this endorsement means:

1. You or any "family member".

2. Any other person while:

a. "Occupying" "your covered auto"; or

b. Not "occupying" a "motor vehicle" if injured as a result of an accident in Pennsylvania involving "your covered auto".

Copyright, Insurance Services Office, Inc., 1992

LMG033



If "your covered auto" is parked and unoccupied it is not a "motor vehicle" involved in an accident unless it is parked in a manner which creates an unreasonable risk of injury.

## II. FIRST PARTY BENEFITS COVERAGE

### INSURING AGREEMENT

#### A. BASIC FIRST PARTY BENEFIT

We will pay, in accordance with the Act, the Basic First Party Benefit to or for an "insured" who sustains "bodily injury". The "bodily injury" must be caused by an accident arising out of the maintenance or use of a "motor vehicle".

Subject to the limit shown in the Schedule or Declarations, the Basic First Party Benefit consists of:

Medical expenses. Reasonable and necessary medical expenses incurred for an "insured's":

1. Care;

2. Recovery; or

3. Rehabilitation.

This includes remedial care and treatment rendered in accordance with a recognized religious method of healing.

Medical expenses will be paid if incurred within 18 months from the date of the accident causing "bodily injury". However, if within 18 months from the date of the accident, it can be determined with reasonable medical probability that additional expenses may be incurred after this period, the 18 month time limit will not apply to the payment of the additional medical expenses.

#### B. ADDED FIRST PARTY BENEFITS

If the Schedule or Declarations indicates that Added First Party Benefits apply, we will pay Added First Party Benefits instead of the Basic First Party Benefit to or for an "insured" who sustains "bodily injury". The "bodily injury" must be caused by an accident arising out of the maintenance or use of a "motor vehicle". These benefits are subject to the provisions of the Act.

Subject to the limits shown in the Schedule or Declarations, Added First Party Benefits consist of the following:

1. Medical expenses as described in the Basic First Party Benefit.

2. Work loss.

a. Loss of income. Up to 80% of gross income actually lost by an "insured" as a result of the accident.

b. Reasonable expenses actually incurred to reduce loss of income by hiring:

   (1) Special help, thereby enabling an "insured" to work; or

   (2) A substitute to perform the work a self-employed "insured" would have performed.

However, work loss does not include:

a. Loss of expected income or expenses incurred for services performed after the death of an "insured"; or

b. Any loss of income, or expenses incurred for services performed, during the first 5 working days the "insured" did not work due to "bodily injury".

3. Funeral expenses. Funeral or burial expenses actually incurred if "bodily injury" causes an "insured's" death within 24 months from the date of the accident.

4. Accidental death. A death benefit paid if "bodily injury" causes the death of you or any "family member" within 24 months from the date of the accident.

We will pay accidental death to the executor or administrator of the deceased "insured's" estate. If there is no executor or administrator, the benefit shall be paid to:

a. The deceased "insured's" surviving spouse; or

b. If there is no surviving spouse, the deceased "insured's" surviving children; or

c. If there is no surviving spouse or children, to the deceased "insured's" estate.

#### C. COMBINATION FIRST PARTY BENEFITS

If the Schedule or Declarations indicates that Combination First Party Benefits apply, we will pay Combination First Party Benefits instead of the Basic First Party Benefit to or for an "insured" who sustains "bodily injury". The "bodily injury" must be caused by an accident arising out of the maintenance or use of a "motor vehicle". These benefits are subject to the provisions of the Act.

Copyright, Insurance Services Office, Inc., 1992
PP 05 51 11 92

LMG034



Subject to the limits shown in the Schedule or Declarations, Combination First Party Benefits consist of the following, as described in the Basic First Party Benefit and Added First Party Benefits:

1. Medical expenses.
2. Work loss.
3. Funeral expenses.
4. Accidental death.

**EXCLUSIONS**

A. We do not provide First Party Benefits Coverage for "bodily injury" sustained by any person:

1. While intentionally causing or attempting to cause "bodily injury" to himself or any other person. We will not pay accidental death on behalf of that person.

2. While committing a felony.

3. While seeking to elude lawful apprehension or arrest by a law enforcement official.

4. While maintaining or using a "motor vehicle" knowingly converted by that person. This exclusion (A.4.) does not apply to:
   a. You; or
   b. Any "family member".

5. Who, at the time of the accident, is:
   a. The owner of one or more registered "motor vehicles", none of which have in effect the financial responsibility required by the Act; or
   b. "Occupying" a "motor vehicle" owned by that person for which the financial responsibility required by the Act is not in effect.

6. Maintaining or using a "motor vehicle" while located for use as a residence or premises.

7. While "occupying" a:
   a. Recreational vehicle designed for use off public roads; or
   b. Motorcycle, moped or similar-type vehicle.

B. We do not provide First Party Benefits Coverage for "bodily injury":

1. Sustained by a pedestrian if the accident occurs outside of Pennsylvania. This exclusion (B.1.) does not apply to:
   a. You; or
   b. Any "family member".

2. Caused by or as a consequence of:
   a. Discharge of a nuclear weapon (even if accidental);
   b. War (declared or undeclared);
   c. Civil war;
   d. Insurrection; or
   e. Rebellion or revolution.

3. From or as a consequence of the following, whether controlled or uncontrolled or however caused:
   a. Nuclear reaction;
   b. Radiation; or
   c. Radioactive contamination.

**LIMIT OF LIABILITY**

A. The limits of liability shown in the Schedule or Declarations for the first party benefits that apply are the most we will pay to or for each "insured" as the result of any one accident, regardless of the number of:

1. Claims made;
2. Vehicles or premiums shown in the Declarations;
3. Vehicles involved in the accident; or
4. Insurers providing first party benefits.

B. If Combination First Party Benefits are afforded, we will make available at least the minimum limit required by the Act for the Basic First Party Benefit. This provision (B.) will not change our maximum limit of liability.

C. Any amounts payable under this coverage shall be excess over any amounts:

1. Paid;
2. Payable; or
3. Required to be provided;

to an "insured" under any workers' compensation law or similar law.

LMG035



## PRIORITIES OF POLICIES

**A.** We will pay first party benefits in accordance with the order of priorities set forth by the Act. We will not pay if there is another insurer at a higher level of priority. The **First** category listed below is the highest level of priority and the **Fourth** category is the lowest level of priority. The priority order is:

| | |
|---|---|
| **First** | The insurer providing benefits to the "insured" as a named insured. |
| **Second** | The insurer providing benefits to the "insured" as a family member who is not a named insured under another policy providing coverage under the Act. |
| **Third** | The insurer of the "motor vehicle" which the "insured" is "occupying" at the time of the accident. |
| **Fourth** | The insurer of any "motor vehicle" involved in the accident if the "insured" is not: <br> **a.** "Occupying" a "motor vehicle"; and <br> **b.** Provided first party benefits under any other automobile policy. <br><br> An unoccupied parked "motor vehicle" is not a "motor vehicle" involved in an accident unless it is parked in a manner which creates an unreasonable risk of injury. |

**B.** If 2 or more policies have equal priority within the highest applicable priority level:

1. The insurer against whom the claim is first made shall process and pay the claim as if wholly responsible. The insurer is then entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim. If such contribution is sought among insurers under the **Fourth** priority, proration shall be based on the number of involved motor vehicles.

2. If we are the insurer against whom the claim is first made, our payment to or for an "insured" will not exceed the applicable limit of liability for First Party Benefits Coverage shown in the Schedule or Declarations.

3. The maximum recovery under all policies will not exceed the amount payable under the policy with the highest limit of liability.

**NON-DUPLICATION OF BENEFITS**

No one will be entitled to recover duplicate payments for the same elements of loss under this or any other similar insurance including self-insurance.

**III. PART F - GENERAL PROVISIONS**

Part F is amended as follows:

The Our Right To Recover Payment provision does not apply.

---

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Copyright, Insurance Services Office, Inc., 1992

PP 05 51 11 92

LMG036



## LIMITED TORT ALTERNATIVE INFORMATION NOTICE - PENNSYLVANIA

AS 2108 04 99
(PP 03 38 07 90)

Each person who elects the limited tort alternative remains eligible to seek compensation for economic loss sustained in a motor vehicle accident as the consequence of the fault of another person pursuant to applicable tort law. Unless the injury sustained is a serious injury, each person who is bound by the limited tort election shall be precluded from maintaining an action for noneconomic loss, except that:

A. An individual otherwise bound by the limited tort election who sustains damages in a motor vehicle accident as the consequence of the fault of another person may recover damages as if the individual damaged had elected the full tort alternative whenever the person at fault:

   1. Is convicted, or accepts Accelerated Rehabilitative Deposition for driving under the influence of alcohol or a controlled substance in that accident;

   2. Is operating a motor vehicle registered in another state;

   3. Intends to injure himself or another person, provided that an individual does not intentionally injure himself or another person merely because his act or failure to act is intentional or done with his realization that it creates a grave risk of causing injury if the act or omission causing the injury is for the purpose of averting bodily harm to himself or another person; or

   4. Has not maintained financial responsibility as required by the Pennsylvania Motor Vehicle Financial Responsibility Law, provided that nothing in Paragraphs 1. through 4. shall affect the limitation of a person, precluded from maintaining an action for noneconomic damages under the limited tort alternative, to recover noneconomic damages under Uninsured Motorists Coverage or Underinsured Motorists Coverage.

B. An individual otherwise bound by the limited tort election shall retain full tort rights with respect to claims against a person in the business of designing, manufacturing, repairing, servicing or otherwise maintaining motor vehicles arising out of a defect in such motor vehicle which is caused by or not corrected by an act or omission in the course of such business, other than a defect in a motor vehicle which is operated by such business.

C. An individual otherwise bound by the limited tort election shall retain full tort rights if injured while an occupant of a motor vehicle other than a private passenger motor vehicle.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1999

LMG037



**Liberty Mutual.** INSURANCE

SPLIT UNDERINSURED MOTORISTS LIMITS - PENNSYLVANIA (NON-STACKED)

PERSONAL AUTO
PP 04 16 07 90

### SCHEDULE

| UNDERINSURED MOTORISTS COVERAGE | $ _____ each person |
| | $ _____ each accident |

Paragraph **A.** of the Limit of Liability provision in the Underinsured Motorists Coverage - Pennsylvania (Non-Stacked) endorsement is replaced by the following:

**LIMIT OF LIABILITY**

**A.** The limit of liability shown in the Schedule or in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Schedule or in the Declarations for each accident for Underinsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident. This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

LMG038

PERSONAL AUTO
PP 04 20 07 90

# SPLIT UNINSURED MOTORISTS LIMITS – PENNSYLVANIA (NON-STACKED)

## SCHEDULE

| UNINSURED MOTORISTS COVERAGE | |
|---|---|
| $ _____ each person | |
| $ _____ each accident | |

Paragraph **A.** of the Limit of Liability provision in the Uninsured Motorists Coverage – Pennsylvania (Non-Stacked) endorsement is replaced by the following:

**LIMIT OF LIABILITY**

**A.** The limit of liability shown in the Schedule or in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Schedule or in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident.

This is the most we will pay regardless of the number of:

1. "Insureds";
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

PP 04 20 07 90     Copyright, Insurance Services Office, Inc., 1990     Page 1 of 1
LMG039



**OPTIONAL TRANSPORTATION EXPENSES COVERAGE**                    AS 2207 02 05

The provisions and exclusions that apply to Part D - Coverage for Damage to Your Auto also apply to this endorsement except as changed by this endorsement.

Optional Transportation Expenses Coverage applies only if:

1. The loss is caused by other than **collision** only if the Declarations indicate that Other Than Collision Coverage is provided for that auto;
2. The loss is caused by **collision** only if the Declarations indicate that Collision Coverage is provided for that auto; and
3. **Your covered auto** or the **non-owned auto** is withdrawn from use for more than 24 hours. In the event of a total theft, the vehicle must have been reported missing for at least 48 hours.

**OPTIONAL TRANSPORTATION EXPENSES COVERAGE**

If:

1. You choose to allow us to make the rental car arrangements with a specific vendor; and
2. You choose to bring the damaged vehicle to a Total Liberty Care (TLC) facility for all repairs.

we will pay, without application of a deductible, temporary transportation expenses incurred by you for renting a substitute auto, as defined by our rental car provider, until the repairs are completed, when there is a loss to **your covered auto** described in the Schedule or in the Declarations for which a specific premium charge indicates that Optional Transportation Expenses Coverage is afforded.

If you require a vehicle which exceeds the optional limit shown on the policy Declarations Page, and we make the arrangements, you will only have to pay the difference between the expense of the vehicle you choose and the optional transportation expenses limit shown in the policy Declarations Page.

<u>OR</u>

If you choose to make your own substitute vehicle arrangements, or choose a repair facility other than a Total Liberty Care (TLC) facility, or your vehicle is a declared a total loss, the following applies for expenses incurred from companies in the business of renting vehicles:

When there is a loss to **your covered auto** described in the Schedule or in the Declarations for which a specific premium charge indicates that Optional Transportation Expenses Coverage is afforded, we will pay, without application of deductible, the amount shown on the policy Declarations Page to a maximum of 30 days for:

1. Additional transportation expenses incurred by you for renting a substitute auto.
2. Additional transportation expenses incurred by you for renting a substitute auto due to a total loss of **your covered auto**.
3. Loss of use expenses for which you become legally responsible in the event of loss to a **non-owned auto**.

All coverage provided by this endorsement shall only apply once for any single occurrence. Our payment will be limited to that period of time reasonably required to repair or replace **your covered auto** or the **non-owned auto**.

(Includes copyrighted material of Insurance Services Office, Inc., with its permission)

LMG040



**SPLIT LIABILITY LIMITS**                                    PP 03 09 04 86

SCHEDULE

| Bodily Injury Liability | $ | each person |
| | $ | each accident |
| Property Damage Liability | $ | each accident |

The first paragraph of the Limit of Liability provision in Part A is replaced by the following:

**LIMIT OF LIABILITY**

The limit of liability shown in the Schedule or in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Schedule or in the Declarations for each accident for Bodily Injury Liability is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident. The limit of liability shown in the Schedule or in the Declarations for each accident for Property Damage Liability is our maximum limit of liability for all "property damage" resulting from any one auto accident. This is the most we will pay regardless of the number of:

1. "Insureds;"
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the auto accident.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

PP 03 09 04 86
Copyright, Insurance Services Office, Inc., 1985

LMG041



NUCLEAR, BIOLOGICAL, CHEMICAL & MOLD EXCLUSION ENDORSEMENT

AS 2221 04 05

## THIS EXCLUSION APPLIES TO <u>ALL COVERAGES</u> PROVIDED BY THIS POLICY INCLUDING ANY AND ALL ENDORSEMENTS

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

Aside from such losses caused by terrorism activities, we **do not** provide coverage for loss, damage, injury, liability, cost or expense, due to or as a consequence of, whether controlled or uncontrolled or however caused:

    a.  Nuclear exposure, reaction or explosion including resulting fire, smoke, radiation or contamination; and/or

    b.  Biological or chemical attack or exposure to biological or chemical agents, or combination of such agents, including resulting contamination or pollution.

We **do not** provide coverage for loss, damage, injury, liability, cost or expense arising out of or aggravated by, in whole or in part, "mold, fungus, wet rot, dry rot, bacteria or virus."

"Mold, fungus, wet rot, dry rot, bacteria or virus" means any type or form of fungus, rot, virus or bacteria.  This includes mold, mildew and any mycotoxins, other microbes, spores, scents or byproducts produced or released by mold, mildew, fungus, rot, bacteria, or virus.

AS 2221 04 05

© 2003 Liberty Mutual Insurance Company

LMG042



## TOWING AND LABOR COVERAGE

AS 2208 02 05

We will pay for emergency roadside assistance charges incurred each time "your covered auto" or any "non-owned auto" is disabled.  This includes:

1. necessary towing charges when you call Liberty Mutual Roadside Assistance and allow us to make arrangements for the tow to the nearest repair facility from the place of disablement;

2. towing charges up to the amount shown on the policy Declarations Page when you either
   a) arrange for the tow; or
   b) request a tow to a repair facility other than the nearest repair facility from the place of disablement; or

3. when a tow is not required, labor charges incurred at the place of disablement, not to exceed the amount shown on the policy Declarations Page.

The nearest repair facility is determined by Liberty Mutual.

This coverage must be shown in the Declarations for the specific disabled vehicle which has this coverage.

If a "non-owned auto" is disabled, we will provide the coverage listed above only if you have purchased Towing and Labor Coverage for at least one "your covered auto" and it is shown in the Declarations.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

AS 2208 02 05

Liberty Mutual Insurance Group

Page 1 of 1

LMG043



**Liberty Mutual.**
INSURANCE

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# COVERAGE FOR DAMAGE TO YOUR AUTO EXCLUSION ENDORSEMENT

PERSONAL AUTO
PP 13 01 12 99

With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

**I.  Definitions**

The following definition is added:

"Diminution in value" means the actual or perceived loss in market or resale value which results from a direct and accidental loss.

**II.  Part D - Coverage For Damage To Your Auto**

The following exclusion is added:

We will not pay for:

Loss to "your covered auto" or any "non-owned auto" due to "diminution in value".

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

PP 13 01 12 99                      Copyright, Insurance Services Office, Inc.,  1999

Page 1 of 1

LMG044



## LOSS PAYABLE CLAUSE

PP 03 05 08 86

Loss Payee: _____

Loss or damage under this policy shall be paid, as interest may appear, to you and the loss payee shown in the Declarations or in this endorsement. This insurance with respect to the interest of the loss payee, shall not become invalid because of your fraudulent acts or omissions unless the loss results from your conversion, secretion or embezzlement of "your covered auto." However, we reserve the right to cancel the policy as permitted by policy terms and the cancellation shall terminate this agreement as to the loss payee's interest. We will give the same advance notice of cancellation to the loss payee as we give to the named insured shown in the Declarations.

When we pay the loss payee we shall, to the extent of payment, be subrogated to the loss payee's rights of recovery.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

PP 03 05 08 86

Copyright, Insurance Services Office, Inc., 1986

LMG045

# EXHIBIT "B"

# PANSINI & MEZROW

### ATTORNEYS AT LAW

15TH FLOOR
1525 LOCUST STREET

## PHILADELPHIA, PENNSYLVANIA 19102

MICHAEL O. PANSINI*
STEVEN M. MEZROW**
GREGORY J. KOWALSKI
ADAM C. DAVIS**

(215) 732-5555
(215) 732-5550

FAX (215) 732-7872

*ALSO MEMBER OF NJ, NY & DC BARS
**ALSO MEMBER OF NJ BAR

August 21, 2020

via Email: bethany.pineda@safeco.com
Liberty Mutual
P.O. Box 515097
Los Angeles, CA 90051-5097

ATTN:      Bethany Pineda, Claims

Re:    Insured:              David Gordon
       Claimant:             David Gordon
       Your Claim No.:       LA000-038411689-03
       Date of Accident:     10/15/2018

Dear Ms. Pineda:

As you know, we represent your insured, David Gordon, in his claim for personal injuries resulting from a motor vehicle accident which occurred on the above date. The tortfeasor's liability insurance company, GEICO, recognizing the damages sustained by my client are greater than Geico's limits of liability coverage, has offered said liability coverage policy in the amount of $15,000.00 to settle my client's claim.

We are hereby notifying you of Geico's offer to settle this claim at its policy limits and we are, therefore, requesting your written consent to settle with the third-party tortfeasor by accepting the tendered policy limits. Enclosed please find a copy of GEICO's Certification of Limits as evidence that said policy limits have been offered.

If you refuse to approve this settlement, be advised that I hereby demand that you pay to my client the offer that has been tendered by GEICO and that you further pay to my client the underinsured motorist benefits to which he is entitled. In return, my client will assign to you whatever claims he has and you may proceed to collect the damages from the tortfeasor and/or GEICO.

August 21, 2020
Page 2

_____

I am providing a copy of <u>Daley-Sand v. West American Insurance Company</u>, 387 Pa. Super. 630, 564 A.2d 965 (1989). This court adopted a procedure for dealing with consent to settle situations such as the one here. The court ruled that if the underinsured carrier wants to pursue its subrogation interest, <u>then it and not not the claimant</u> should bear the burden of this procedure. If the underinsured motorist carrier is interested in protecting its right of subrogation, it must substitute a draft of its own in place of a draft that the liability carrier was willing to tender to the plaintiff. <u>Alternatively, the carrier can simply waive its subrogation rights and avoid payment of a draft equal to the amount offered to the plaintiff</u>. <u>Baith v. CNA Insurance Company</u>, 406 Pa. Super. 84, 593 A.2d 881 (1991). (Also enclosed).

Finally, I request that you respond within thirty (30) days from the date of this letter as per the <u>Daley-Sand</u> case. Should I not hear from you within thirty days, **I will conclude that you have consented to my client's settlement with GEIICO and I will release the tortfeasor.**

Your immediate attention to this matter is appreciated.

Very truly yours,

PANSINI & MEZROW

STEVEN M. MEZROW

/smm
Enclosure

# EXHIBIT "C"



**Liberty Mutual.**
INSURANCE

October 02, 2020



## CONTACT US

**By Phone**
Direct:    (856) 355-7686
Toll Free: (800) 225-2467
Ext.       72631
Fax:       (866) 864-2525

**By E-mail**
rebecca.harris01@
libertymutual.com

**LM General Insurance Company**
P.O. Box 515097
Los Angeles, CA 90051-5097

**Visit us online**
LibertyMutual.com

Pansini Law Firm
1525 Locust St 15th FL
Philadelphia PA 19102-3712

| | |
|---|---|
| Insured: | Samaya Gordon |
| Claimant: | David Gordon |
| Claim Number: | LA000-038411689-07 |
| Date of Loss: | 10/15/2018 |
| Policy Number: | AOS-281-208549-70 |

Dear Mr. Mezrow,

This letter is to acknowledge receipt of your letter requesting consent to settle in the above matter. Please accept this letter as authorization for you to accept the $15,000 settlement offer being made by Geico Insurance Company, on behalf of Meghan Hill.

Please forward to my attention any and all medical records for this loss. If you have any questions or concerns do not hesitate to contact me.

Sincerely,
Rebecca Harris
Claims Department

# EXHIBIT "D"

# PANSINI, MEZROW & DAVIS
### ATTORNEYS AT LAW
15TH FLOOR
1525 LOCUST STREET
### PHILADELPHIA, PENNSYLVANIA 19102

MICHAEL O. PANSINI*
STEVEN M. MEZROW**
GREGORY J. KOWALSKI
ADAM C. DAVIS**

(215) 732-5555
(215) 732-5550

FAX (215) 732-7872

*ALSO MEMBER OF NJ, NY & DC BARS
**ALSO MEMBER OF NJ BAR

January 11, 2021

via Email: rebecca.harris01@libertymutual.com
Liberty Mutual
P.O. Box 515097
Los Angeles, CA 90051-5097

ATTN:      Rebecca Harris, Claims

Re:     Insured:          David Gordon
        Claimant:         David Gordon
        Your Claim No.:   LA000-038411689-03
        Date of Accident: 10/15/2018

Dear Ms. Harris:

This will serve to formally advise you in your capacity as the adjuster for Liberty Mutual Insurance and its insured, David Gordon, that my client will accept the sum of $100,000.00 in full settlement of his UIM personal injury claim against Liberty Mutual Insurance on satisfactory proof that the liability insurance coverages (including excess policies) for the above incident do not exceed this figure.

As documented in the attached medical records, there is no question that this case has a value far in excess of your insured's $100,000.00 policy limits. Your insured has been diagnosed as having a traumatic brain injury/concussion by his primary care physician, Moss Rehabilitation, as well as a board certified neurologist who was the Chief of Neurology at the VA for over 15 years. The neurologist has diagnosed as follows:

*   post-concussive syndrome (mTBI) secondary to closed head injury with persistent post-concussive headaches, dizziness, and photosensitivity/photophobia;

The treating neurologist went on to state:

He has definite limitations in terms of his headaches and photophobia. His dizziness is also problematic. He has been

Liberty Mutual
Page 2

> able to maintain his job working as a bus driver but has had to
> switch to the day shift because of the persistent photophobia
> and photosensitivity with glare and night,.

See report of neurologist attached hereto.

With respect to the mechanism of injury, there is no question that the impact was severe supporting the traumatic brain injury. In fact, airbags deployed striking your insured in the face and head. In fact, your insured was cause to miss 3-1/2 months of work due to the accident-related injuries.

Enclosed please find the following medical specials for David Gordon regarding the above motor vehicle accident:

- Philadelphia EMS, 10/15/18;
- Hospital of the University of Pennsylvania, ER 10/15/18;
- Katherine Mahon, M.D.;
- Michael Cohen, M.D.;
- Crozer PT/Veronica Hache
- Dr. Miriam Segal/Moss Rehab

This case has a jury verdict potential against Liberty Mutual far in excess of the $100,000.00 total coverage through Liberty Mutual and the underlying insurer, based on the information provided to you. The underlying insurer tendered their policy limits of $15,000.00. Please be advised that this offer of $100,000.00 will remain open until February 11, 2021. Thereafter, **no** offers of settlement within Liberty Mutual's insurance coverage will be considered.

Pennsylvania law imposes upon an insurance carrier a duty to act in good faith in handling claims against its insured. Due to an insurance carrier's exclusive control of the handling and disposition of claims, a fiduciary relationship is created between the carrier and insured which obligates the carrier to consider the interests of its insured <u>before</u> refusing a settlement offer. This duty and fiduciary relationship has been outlined in several decisions in this Commonwealth, e.g., <u>Birth Center v. St. Paul Cos.</u>, Inc., 787 A.2d 376, 390 (Pa. 2000); <u>Ashbrook v. Kowalic</u>, 332 F. Supp. 78 (E.D. Pa. 1971); <u>Shearer v. State Farm Mutual Insurance Company</u>, 286 Pa. Super. 188, 428 A. 2d 635 (1981); <u>Cowden v. Aetna Casualty and Surety Company</u>, 389 Pa. 459, 134 A.2d 233 (1957); <u>Bell v. Commercial Insurance Company of Newark</u>, New Jersey, 280 F.2d 514 (3rd Cir. 1960);

Liberty Mutual
Page 3

Gray v. Nationwide Mutual Insurance Company, 422 Pa. 500, 223 A.2d 8 (1966); and Clark v. Interstate National Corporation, 486 F. Supp. 145 (E.D. Pa. 1980); aff'd 636 F.2d 1207 (3rd Cir. 1980). The Pennsylvania Supreme Court explained it best in Gedeon v. State Farm Mutual Automobile Insurance Company, 410 Pa. 55, 59, 188 A.2d 320 (1963):

> "[B]y asserting in the policy the right to handle all claims against the insured, including the right to make a binding settlement, the insurer assumes a fiduciary position towards the insured and becomes obligated to act in good faith and with due care in representing the interest of the insured. If the insurer is derelict in this duty, as where it negligently investigates the claim or unreasonably refuses an offer of settlement, it may be liable regardless of the limits of the policy, for the entire amount of the judgment secured against the insured".

The "[Superior] Court has noted that **the bad faith statute extends to the handling of UIM claims**". [Emphasis added.] Condio v. Erie Ins. Exch., 2006 Pa.Super. 92, ¶ 13, 899 A.2d 1136, 1142 (Pa.Super. 2006). See also, Bonenberger v. Nationwide Mutual Insurance Company, 791 A.2d, 378, 380 (Pa.Super.2002). Also, "section 8371 is not restricted to an insurer's bad faith in denying a claim. An action for bad faith may extend to the insurer's investigative practices." O'Donnell v. Allstate Insurance Company, 734 A.2d, 901, 906 (Pa.Super.1999). Your immediate attention to this matter is appreciated.

Very truly yours,

PANSINI, MEZROW & DAVIS

MICHAEL O. PANSINI
STEVEN M. MEZROW

/dan

Enclosures

# EXHIBIT "E"

PANSINI, MEZROW & DAVIS
BY:   MICHAEL O. PANSINI, ESQUIRE
I.D.   #44455
BY:   STEVEN M. MEZROW, ESQUIRE
I.D.   #43746
1525 Locust Street, 15th Floor
Philadelphia, PA 19102
(215) 732-5555

*Filed and Attested by the
Office of Judicial Records
27 MAY 2022 01:18 pm
S. RICE*

**THIS IS A MAJOR JURY TRIAL**

**Attorneys for Plaintiffs**

| | | |
|---|---|---|
| DAVID GORDON AND<br>SAMAYA GORDON<br>306 Spruce Street<br>Glenolden, PA 19036 | : <br> : <br> : <br> : <br> : | COUNTY OF PHILADELPHIA<br>COURT OF COMMON PLEAS<br>CIVIL TRIAL DIVISION |
| vs. | : <br> : <br> : | |
| LIBERTY MUTUAL INSURANCE<br>P.O. Box 5014<br>Scranton, PA 18505 | : <br> : <br> : | NO. |

## CIVIL ACTION - COMPLAINT - NOTICE TO DEFEND
## 1C - CONTRACT / UIM / BAD FAITH

YOU HAVE BEEN SUED IN COURT. IF YOU WISH TO DEFEND AGAINST THE CLAIMS SET FORTH IN THE FOLLOWING PAGES, YOU MUST TAKE ACTION WITHIN TWENTY (20) DAYS AFTER THIS COMPLAINT AND NOTICE ARE SERVED, BY ENTERING A WRITTEN APPEARANCE PERSONALLY OR BY AN ATTORNEY AND FILING IN WRITING WITH THE COURT YOUR DEFENSES OR OBJECTIONS TO THE CLAIMS SET FORTH AGAINST YOU. YOU ARE WARNED THAT IF YOU FAIL TO DO SO THE CASE MAY PROCEED WITHOUT YOU AND A JUDGMENT MAY BE ENTERED AGAINST YOU BY THE COURT WITHOUT FURTHER NOTICE FOR ANY MONEY CLAIMED OR FOR ANY OTHER CLAIM OR RELIEF REQUESTED BY THE PLAINTIFF. YOU MAY LOSE MONEY OR PROPERTY OR OTHER RIGHTS IMPORTANT TO YOU.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

Philadelphia Bar Association
Lawyer Referral and Information Service
One Reading Center
Philadelphia, Pennsylvania 19107
(215) 238-6333

LE HAN DEMANDADO A USTED EN LA CORTE. SI USTED QUIERE DEFENDERSE DE ESTAS DEMANDAS EXPUESTAS EN LAS PAGINAS SIGUIENTES, USTED TIENE VIENTE (20) DIAS, DE PLAZO AL PARTIR DE LA FECHA DE LA DEMANDA Y LA NOTIFICATION. HACE FALTA ASENTAR UNA COMPARENCIA ESCRITA O EN FORMA ESCRITA SUS DEFENSAS O SUS OBJECIONES A LAS DEMANDAS EN CONTRA DE SU PERSONA. SEA AVISADO QUE SI USTED NO SE DEFIENDE, LA CORTE TOMARA MEDIDAS Y PUEDE CONTINUAR LA DEMANDA EN CONTRA SUYA SIN PREVIO AVISO O NOTIFICACION. ADEMAS, LA CORTE PUEDE DICIDIR A FAVOR DEL DEMANDANTE Y REQUIERE QUE USTED CUMPLA CON TODAS LAS PROVISIONES DE ESTA DEMANDA. USTED PUEDE PERDER DINERO O SUS PROPIEDADES U OTROS DERECHOS IMPORTANTES PARA USTED.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

Asociacion de Licenciados de Filadelphia
Servicio de Referencia e Informacion Legal
One Reading Center
Filadelfia, Pennsylvania 19107
(215) 238-6333

Case ID: 220502605

PANSINI, MEZROW & DAVIS
BY:    MICHAEL O. PANSINI, ESQUIRE
I.D.    #44455
BY:    STEVEN M. MEZROW, ESQUIRE
I.D.    #43746
1525 Locust Street, 15th Floor          **THIS IS A MAJOR JURY TRIAL**
Philadelphia, PA 19102
(215) 732-5555                          **Attorneys for Plaintiffs**

| | | |
|---|---|---|
| **DAVID GORDON AND** | : | **COUNTY OF PHILADELPHIA** |
| **SAMAYA GORDON** | : | **COURT OF COMMON PLEAS** |
| **306 Spruce Street** | : | **CIVIL TRIAL DIVISION** |
| **Glenolden, PA 19036** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **LIBERTY MUTUAL** | : | **NO.** |
| **P.O. Box 5014** | : | |
| **Scranton, PA 18505** | : | |

### CIVIL ACTION - COMPLAINT
### 1C - CONTRACT / UIM / BAD FAITH

1.    Plaintiff, **DAVID GORDON**, is an adult individual residing at 306 Spruce

Street, Glenolden, PA 19036.

2.    Plaintiff, **SAMAYA GORDON**, is an adult individual residing at 306 Spruce

Street, Glenolden, PA 19036.

3.    Defendant, **LIBERTY MUTUAL INSURANCE,** is a corporation or other

business entity engaged in the insurance business, which operates in the Commonwealth

of Pennsylvania, and at all times relevant to this cause of action was authorized and did

sell liability insurance policies throughout the Commonwealth of Pennsylvania and which

at all times material hereto is amenable to service at 111 S. Independence Mall East,

Philadelphia, PA 19106.  At all times relevant hereto, said Defendant has engaged in

business within the County of Philadelphia on a regular, systematic, continuous and

substantial basis.

4.      Prior to October 15, 2018, the Defendant, **LIBERTY MUTUAL INSURANCE**,
issued a policy of automobile liability insurance to Plaintiff, **DAVID GORDON**.  Said policy
was numbered AOS-281-208549-70 8 9 and was effective on all dates hereinafter
mentioned (Attached hereto as Exhibit "A").

5.      The aforesaid policy of automobile liability insurance provided for payment
of underinsured motorist benefits in accordance with the provisions of the Pennsylvania
Motor Vehicle Financial Responsibility Law.

6.      On or about October 15, 2018, the aforesaid policy of automobile liability
insurance, including the provisions for payment of underinsured motorist benefits, was in
full force and effect.

7.      On or about October 15, 2018, a vehicle owned and operated by **MEGHAN
HILL**, was traveling on Grays Ferry Avenue, at or near its intersection with 29th Street, in
Philadelphia, PA, when it was so carelessly and negligently operated and controlled that
Defendant, **MEGHAN HILL,** made a left turn directly into the path of Plaintiff's vehicle
which was lawfully upon the roadway causing a violent collision.

8.      By reason of the aforesaid negligence of the tortfeasor motor vehicle
operator, the Plaintiff, **DAVID GORDON,** suffered severe and permanent injuries to his
head, neck, back, arms and legs; he also sustained severe and permanent injuries to the
bones, muscles, tendons, ligaments, nerves and tissues of his head, neck, back, arms and
legs; including but not limited to traumatic brain injury, post-concussive syndrome, closed
head injury, cognitive deficits, injuries to the nerves, tissues and joints, aggravation and/or

2

exacerbation of all known and unknown preexisting medical conditions. The Plaintiff, **DAVID GORDON**, suffered internal injuries of an unknown nature; and other injuries the full extent of which are not yet known. He has in the past and will in the future undergo severe pain and suffering as a result of which he has been in the past and will in the future be unable to attend to his usual duties and occupation, all to his great financial detriment and loss. The Plaintiff, **DAVID GORDON**, believes and therefore avers that his injuries are permanent in nature.

9.    As a result of the aforesaid occurrence, the Plaintiff, **DAVID GORDON**, has been compelled, in order to effectuate a cure for the aforesaid injuries, to expend large sums of money for medicine and medical attention and may be required to expend additional sums for the same purposes in the future.

10.    As a result of the aforesaid occurrence, the Plaintiff, **DAVID GORDON**, has been prevented from attending to his usual and daily activities and duties, and may be so prevented for an indefinite time in the future, all to his great detriment and loss.

11.    As a result of the aforesaid occurrence, the Plaintiff, **DAVID GORDON**, has suffered physical pain, mental anguish and humiliation and he may continue to suffer same for an indefinite period of time in the future.

12.    The insurance company for the tortfeasor tendered its policy limits. The tortfeasor was insured by Geico Insurance Company.

13.    Defendant, **LIBERTY MUTUAL INSURANCE** as the insurer of Plaintiff, **DAVID GORDON**, gave its consent to settle with the tortfeasor.

14.    On or before October 15, 2018, Defendant, **LIBERTY MUTUAL**

3

Case ID: 220502605

INSURANCE, acknowledged Plaintiffs' underinsured motorist claim.

15.    Upon information and belief, Defendant, **LIBERTY MUTUAL INSURANCE,** policy applicable to this loss does not contain an arbitration clause regarding the underinsured motorist claim.  As such, this litigation was commenced to seek recovery of underinsured motorist benefits under Defendant, **LIBERTY MUTUAL INSURANCE** policy of insurance.

16.    As the negligent tortfeasor who caused the severe and permanent injuries sustained by Plaintiff, **DAVID GORDON,** was underinsured, Plaintiff, **DAVID GORDON ,** requests and is entitled to recovery of the limits of his underinsured motorist coverage through Defendant, **LIBERTY MUTUAL INSURANCE.**

17.    At all times relevant hereto, Defendant, **LIBERTY MUTUAL INSURANCE,** engaged in the insurance business for profit.

18.    At all times relevant hereto, Defendant, **LIBERTY MUTUAL INSURANCE,** was engaged in the business of selling insurance and insurance policies in the Commonwealth of Pennsylvania, and specifically, did sell the said policy of liability insurance covering Plaintiff.

19.    The premium requested by Defendant, **LIBERTY MUTUAL INSURANCE,** as payment for said policy of said insurance policy had, prior to October 15, 2018, been paid in full.

20.    As the insurer of Plaintiff, **DAVID GORDON,** Defendant, **LIBERTY MUTUAL INSURANCE,** has a fiduciary, contractual and statutory duty towards Plaintiff with respect to the payment of underinsured motorist benefits.

4

Case ID: 220502605

21.     As the insurer of Plaintiff, **DAVID GORDON**, Defendant, **LIBERTY MUTUAL INSURANCE**, has a fiduciary, contractual and statutory duty towards Plaintiff to negotiate his claim in good faith in order to arrive at a prompt, fair and equitable settlement.

22.     Due to the documented injuries suffered by Plaintiff, **DAVID GORDON** which injuries are reported to be permanent, the value of his claim was in excess of the policy limits of both the third-party carrier as well as the policy limits of Defendant, **LIBERTY MUTUAL INSURANCE**.

23.     At all times relevant hereto, Geico, after receiving the medical documentation and after performing a reasonable investigation concluded that the reasonable value of Plaintiff, **DAVID GORDON'S** claim was in excess of the $15,000 policy limits.

24.     At all times relevant hereto, Defendant, **LIBERTY MUTUAL INSURANCE,** engaged in a policy, practice and pattern to deny Plaintiffs' insurance coverage under the policy of insurance at issue with money and profits to Motorist Insurance as a factor in its decision making.

25.     At all times relevant hereto, Defendant, **LIBERTY MUTUAL INSURANCE**, through its ostensible agents, servants and/or employees, acted to protect the interests and assets of **LIBERTY MUTUAL INSURANCE**.

26.     At all times relevant hereto, Plaintiff fully complied with the terms and conditions of the subject policy of insurance, and all conditions precedent to the Plaintiff's right to recover under said policy of insurance have been performed or have occurred.

27.     Defendant,   **LIBERTY MUTUAL INSURANCE**, refused, without legal justification or cause, to negotiate promptly or fairly and/or pay Plaintiffs a reasonable and

Case ID: 220502605

fair sum for the damages suffered as a result of the aforementioned accident and resultant injuries pursuant to the policy of insurance.

28.    As part of the policy, practice and procedure for Defendant, **LIBERTY MUTUAL INSURANCE**, to be more profitable, Defendant, **LIBERTY MUTUAL INSURANCE** knowingly refused to pay benefits pursuant to its contract of insurance and its statutory obligation, failed to promptly settle claims when liability and damages had become reasonably clear, made unreasonably low offers to its insured and engaged in dilatory tactics to hold on to the insurance proceeds as long as possible.

29.    As a result of the serious and permanent injuries suffered by Plaintiff, **DAVID GORDON**, Plaintiff demanded of Defendant, **LIBERTY MUTUAL INSURANCE**, its policy limits underinsured motorist benefits.

30.    Acting with a dishonest purpose and knowingly breaching a duty of good faith and fair dealing, Defendant acted with the motive of self-interest by engaging in improper claims handling, denying benefits under the policy of insurance, "low-balling" Plaintiff and engaging in dilatory tactics by engaging in behavior which includes but is not limited to the following:

    a.    Failing to make any reasonable offer to settle the underinsured motorist claim;

    b.    Providing Plaintiff with no explanation or any reason for not making a reasonable offer to settle;

    c.    Repeatedly and needlessly dragging out the process by requesting volumes of documents, forcing Plaintiff to undergo multiple Statements Under Oath and other dilatory tactics;

    d.    Forcing Plaintiff to arbitrate reasonable claims which

Case ID: 220502605

Defendant knowingly and recklessly disregarded; and,

   e.   Acting in a biased self-serving manner in it's claims handling process.

31.   Defendant recklessly disregarded its lack of reasonable basis in denying Plaintiffs' claim.

32.   Defendant's conduct was outrageous and reckless under the circumstances and specifically in light of the following:

   a.   There was no dispute as to liability; and,

   b.   Plaintiff's treating physicians have opined that his injures were permanent and causally related to the crash at issue.

33.   It is obvious that Defendant acted in reckless disregard for the interests of its insured.

34.   As set forth above, Defendant's refusal to pay proceeds under the policy of insurance was frivolous and unfounded.

35.   At all times relevant hereto, Defendant acted with a dishonest purpose and knowingly breached a known duty (i.e. to act in good faith and fair dealing) as it was motivated by self-interest.

36.   The conduct of Defendant included, but is not limited to the following:

   a.   Negligently, recklessly, carelessly and wantonly failing to negotiate in good faith to settle with its insured;

   b.   Failing to give equal consideration to paying the claim as to not paying the claim;

   c.   Asserting policy defenses without any reasonable basis in fact;

   d.   Compelling Plaintiff to institute litigation to obtain policy

7

benefits that Defendant should have paid promptly and without the necessity of litigation;

e.  Dilatory and abusive claims handling;

f.  Unreasonably evaluating Plaintiff's claims and failing to fairly negotiate the amount of the claim with Plaintiff's or his representatives;

g.  Placing unduly restrictive and self-serving interpretation of the policy and/or claims forms;

h.  Failing to keep Plaintiff fairly and adequately advised as to the status of the claim;

i.  Failing to advise Plaintiff as to the basis or reasons for which Defendant failed to or refused to pay Plaintiff's benefits under the policy of insurance;

j.  Acting unreasonably and unfairly in response to Plaintiff's claim;

k.  Failing to promptly provide a reasonably factual explanation for the basis of Defendant's actions;

l.  Conducting unfair and unreasonable investigations of Plaintiff's claims;

m.  Knowingly making baseless accusations to "low-ball" Plaintiff's claim;

n.  Failing to act reasonably in making a reasonable offer;

o.  Knowingly and recklessly retaining doctors who act on behalf of insurance companies whose reports are biased, self-serving and disingenuous;

p.  Questioning Plaintiff's credibility without having any factual basis to support same;

q.  Unreasonably and unfairly withholding policy benefits justly due and owing Plaintiff;

r.  Defending this underinsured motorist claim by attacking the good name of its insured without justification;

8

Case ID: 220502605

s.      Negligently, recklessly, carelessly, and wantonly
        ignoring and disregarding its fiduciary duty to Plaintiff
        as its insured; and

t.      Negligently, recklessly, carelessly and wantonly failing
        to comply with the established law of the
        Commonwealth of Pennsylvania and the statutes of the
        Commonwealth of Pennsylvania in a manner in which
        they conducted their investigation.

37.    As the insurer of Plaintiff, **DAVID GORDON**, Defendant, **LIBERTY MUTUAL**

**INSURANCE** owed fiduciary, contractual and statutory duties to Plaintiff to negotiate his

claim in good faith to arrive at a prompt, fair and equitable settlement.

38.    Nevertheless, Defendant, **LIBERTY MUTUAL INSURANCE,** knowingly and

recklessly acted without legal justification or cause when failing to negotiate in good faith

and/or to pay Plaintiff a sum to which Plaintiff was entitled.

39.    The acts and/or omissions set forth above, constitute reckless and wanton

behavior on the part Defendant, **LIBERTY MUTUAL INSURANCE**.

40.    All conditions precedent have been performed, have occurred or have been

waived.

**COUNT I**
**DAVID GORDON  V. LIBERTY MUTUAL INSURANCE**
<u>**BAD FAITH**</u>

41.    Plaintiffs hereby incorporates the allegations contained in the preceding

paragraphs, inclusive, as if fully set forth herein at length.

42.    Defendant, **LIBERTY MUTUAL INSURANCE**, has violated its fiduciary,

contractual and/or statutory duties of good faith and fair dealing by acting in bad faith

towards Plaintiff in violation of the policy's implied covenant of good faith and fair dealing,

9

Case ID: 220502605

and in specific violation of 42 Pa.C.S.A. §8371.

43.    Plaintiff, **DAVID GORDON**, herein alleged that the acts and/or omissions of

Defendant acting individually by and through their agents, servants and employees acting

within the course and scope of their employment, as herein above alleged, constitutes

conduct and behavior that was reckless, willful and wanton, which would entitle the Plaintiff

to punitive damages under the decisional law and statutory law of the Commonwealth of

Pennsylvania.

44.    The statute of the Commonwealth of Pennsylvania, known and characterized

as the "Bad Faith" Statute, Act of February 7, P.L. 11 1990 No. 6 §3, (42 Pa.C.S.A. §8371

Actions On Insurance Policies, sub-chapter G. Special Damages), provides as follows:

> In an action arising under an insurance policy, if the court finds
> that the insurer has acted in bad faith towards the insured, the
> court may take all of the following actions:
>
> (1)    Award interest on the amount of the claim from the date
>        the claim was made by the insured in an amount equal
>        to the prime rate of interest plus 3%.
>
> (2)    Award punitive damages against the insurer.
>
> (3)    Access court costs and attorney fees against the
>        insurer.

45.    Plaintiff, **DAVID GORDON**, herein brings this action for bad faith under and

by virtue of the statutes of the Commonwealth of Pennsylvania entitled "Actions on

Insurance Policies," 42 Pa. C.S. §8371 *et seq.*, for damages herein above alleged, with

interest thereon, compensatory damages, together with punitive damages, and for

assessment of court costs and attorneys fees against Defendant, **LIBERTY MUTUAL**

**INSURANCE**, as insurer of Plaintiffs herein.

10

46.    Plaintiffs further brings this action against Defendant, **LIBERTY MUTUAL INSURANCE**, acting by and through its agents, servants and employees of **LIBERTY MUTUAL INSURANCE**, as insurers, for breach of their contractual duties of an insurer in Pennsylvania towards an insured for:

a.    failing to acknowledge and act promptly upon written and oral communications with respect to claims arising under the insurance policy;

b.    failing to adopt and implement reasonable standards for the prompt investigation of claims arising under the insurance policy;

c.    refusing to pay claim without conducting a reasonable investigation based upon all available information;

d.    failing to affirm or deny coverage of claims withing a reasonable time after proof of loss statements had been completed and communicated to the company or its representatives;

e.    not attempting in good faith to effectuate prompt, fair and equitable settlement of claims in which Defendants liability under the policy has become reasonably clear;

f.    compelling persons to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts due and ultimately recovered in actions brought by such persons;

g.    failing in its duties to its insured in violation of its policy of insurance and under the laws of Pennsylvania;

h.    failing to fulfill its fiduciary duty to Plaintiff;

i.    failing to afford the interest of its insured (the Plaintiff) the same faithful consideration it gives its own interest;

j.    recklessly failing to make a reasonable offer to settle;

k.    improperly disregarding the repeated and consistent

11

Case ID: 220502605

offers to settle the claims for a fair and reasonable sum;

l.     taking the unreasonable position with respect to contractual rights of the policyholder and acting unreasonably to avoid paying a reasonable sum for Plaintiff's claims;

m.    deliberating attacking the good name of its own insured when the contract documents supported the insured's sworn testimony and when there was no credible evidence for Defendant to attack the good name and reputation of its insured; and,

n.    deliberately and intentionally hiring paid defense doctors who act on behalf of insurance companies whose reports are biased, self-serving and disingenuous.

47.    As the insurer of Plaintiff, **DAVID GORDON**, Defendant, **LIBERTY MUTUAL INSURANCE** owes a fiduciary, contractual and statutory duty to Plaintiff to negotiate his claim in good faith to arrive at a prompt, fair and equitable settlement.

48.    Nevertheless, Defendant, **LIBERTY MUTUAL INSURANCE** knowingly and recklessly acted without legal justification or cause when failing to negotiate in good faith and/or to pay Plaintiff a sum to which Plaintiff was entitled.

49.    At all times relevant hereto, Defendant, **LIBERTY MUTUAL INSURANCE**, with a dishonest purpose, knowingly breached a known duty (i.e. to act in good faith and fair dealing) as it was motivated by self-interest.

50.    As a result of the above described conduct, Plaintiff, **DAVID GORDON,** was forced to litigate claims against Defendant, **LIBERTY MUTUAL INSURANCE** forced to incur costs and attorneys fees, and forced to suffer other damages in an exact amount yet to be determined and for which he is entitled to compensatory, consequential and punitive

12

Case ID: 220502605

damages and attorneys fees, including but not limited to those damages provided by 42

Pa. C.S.A. Section 8371.

WHEREFORE, Plaintiff, **DAVID GORDON,** demands judgment against Defendant,

**LIBERTY MUTUAL INSURANCE**, in an amount in excess of Fifty Thousand ($50,000.00)

Dollars, plus interest on the amount of the award for compensatory damages from the date

of the claim made by Plaintiff in an amount equal to the prime rate of interest plus 3%, plus

punitive damages, plus reasonable attorney fees, plus costs and such other relief this

Court deems proper under 42 Pa. C.S.A. §8371.

## COUNT II
## DAVID GORDON  V. LIBERTY MUTUAL INSURANCE
## BREACH OF CONTRACT

51.    Plaintiffs hereby incorporates the allegations contained in the preceding

paragraphs, inclusive, as if fully set forth herein at length.

52.    The said policy of insurance as herein above alleged constituted a valid

contract between Plaintiff as insured and Defendant, **LIBERTY MUTUAL INSURANCE**.

53.    The said insurance contract imposed upon the Defendant, **LIBERTY

MUTUAL INSURANCE**, and upon its agents, servants and employees acting within the

course and scope of their employment with **LIBERTY MUTUAL INSURANCE**, an

agreement and a duty upon the said Defendant to use good faith and apply fair dealing

towards the Plaintiff/Insured in handling claims.

54.    Plaintiff, **DAVID GORDON,** herein at all times relevant to this cause of action

fully and completely cooperated with the Defendant, **LIBERTY MUTUAL INSURANCE**,

herein and fulfilled all of their obligations under the policy of insurance at issue which was

13

Case ID: 220502605

in full force and effect at all times relevant to the underlining action.

55.    By failing to pay underinsured motorist benefits and by failing to offer indemnification to Plaintiff, **DAVID GORDON** for losses after accepting the premiums paid and by further failing to negotiate with Plaintiff and/or their authorized representatives in good faith, Defendant, **LIBERTY MUTUAL INSURANCE**, has breached its fiduciary, contractual and statutory obligation to Plaintiff.

56.    As a result of Defendant's breach of its fiduciary, contractual and statutory obligations to Plaintiff, **DAVID GORDON,** as set forth above, Plaintiff was forced to litigate claims against Defendant, **LIBERTY MUTUAL INSURANCE** forced to incur costs and attorneys fees, and forced to suffer other damages in an exact amount yet to be determined.

**WHEREFORE**, Plaintiff, **DAVID GORDON,** demand judgment against Defendant, **LIBERTY MUTUAL INSURANCE**, in an amount in excess of Fifty Thousand ($50,000.00) Dollars, plus interest, costs, expenses and such other relief as this Court deems just and proper.

**COUNT III**
**LOSS OF CONSORTIUM**
**SAMAYA GORDON VS. LIBERTY MUTUAL INSURANCE**

57.    Plaintiffs hereby incorporates the allegations contained in the preceding paragraphs, inclusive, as if fully set forth herein at length.

58.    Plaintiff, **SAMAYA GORDON**, is the spouse of Plaintiff, **DAVID GORDON,** and as such has incurred expense in the treatment of her spouses injuries and may in the future be caused to incur additional expenses as she has in the past.

14

Case ID: 220502605

59.    As a result of the aforesaid occurrence, Plaintiff, **SAMAYA GORDON**, to her great detriment and loss, has been deprived of the society, companionship, services and consortium of her spouse, all of which may be permanent.

**WHEREFORE**, Plaintiff, **SAMAYA GORDON,** demands judgment against Defendant, **LIBERTY MUTUAL INSURANCE**, in an amount in excess of Fifty Thousand ($50,000.00) Dollars, plus interest, costs, expenses, and such other relief as this Court deems just and proper.

**Respectfully submitted,**

**PANSINI, MEZROW & DAVIS**

DATE:  May 26, 2022            BY:  /s/ MICHAEL O. PANSINI
                               **MICHAEL O. PANSINI, ESQUIRE**
                               **STEVEN M. MEZROW, ESQUIRE**
                               **Attorneys for Plaintiffs**

Case ID: 220502605

VERIFICATION

I, David Gordon                          , state that I am the within named Plaintiff and that

the facts set forth in the foregoing  Civil Action Complaint

are true and correct to the best of my knowledge, information and belief; and that this

statement is made subject to the penalties of 18 Pa. C.S.A. Section 4904 relating to

unsworn falsification to authorities.

DAVID GORDON

DATED:  5/27/22

Case ID: 220502605

# EXHIBIT "F"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID GORDON and SAMAYA GORDON | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | NO. 22-2567 |
| | : | |
| LM GENERAL INSURANCE COMPANY | : | |
| | : | |

## <u>VERDICT</u>

### The sworn jury of eight persons unanimously finds:

**Question 1.** Was Megan Hill negligent with regard to the October 15, 2018 accident?

YES __✓__          NO_____

*If you answered "YES" to Question No. 1, please proceed to Question No. 2.*
*If you answered "NO" to Question No. 1, please notify the Deputy you
completed your deliberations.*

**Question 2.** Was Megan Hill's negligence a factual cause of the harm to David Gordon?

YES __✓__          NO_____

*If you answered "YES" to Question No. 2, please proceed to Question No. 3.*
*If you answered "NO" to Question No. 2, please notify the Deputy
you have completed your deliberations.*

**Question 3.** Was David Gordon negligent with regard to the October 15, 2018 accident?

YES _____          NO__✓__

*If you answered "YES" to Question No.3, please proceed to Question No. 4.*
*If you answered "NO" to Question No. 3, proceed to Question No. 6.*

**Question 4.** Was David Gordon's negligence a factual cause of the harm to David Gordon?

YES _____          NO_____

*If you answered "YES" to Question No. 4, please proceed to Question No. 5.*
*If you answered "NO" to Question No. 4, please proceed to Question No. 6*

**Question 5.** Taking the combined negligence which you found to be a factual cause of harm to David Gordon arising from the October 15, 2018 accident as 100 percent (100%), what percentage of the negligence do you attribute to David Gordon and what percentage do you attribute to Megan Hill?

Percentage of negligence attributable to David Gordon          _____ %

Percentage of negligence attributable to Megan Hill          _____ %

Total 100%

*If you have found David Gordon's percentage is greater than 50 percent, please notify the Deputy you have completed your deliberations.*

*If you have found David Gordon's percentage is 50 percent or less, please proceed to Question No. 6.*

**Question 6.** What economic damages has David Gordon sustained as a result of the October 15, 2018 accident?

$ ___360,000.00___ (360K)

2

**Question 7.** Did David Gordon sustain a serious impairment of a body function as a result of the October 15, 2018 accident?

YES _____ ✓      NO _____

*If you answered "YES" to Question No. 7, please proceed to Question Nos. 8 & 9.*
*If you answered "NO" to Question No. 7, please notify the*
*Deputy you have completed your deliberations.*

**Question 8.** What non-economic damages has David Gordon sustained as a result of the October 15, 2018 accident?

$ _____ 150 K _____ ($150,000.00)

**Question 9.** What damages has Samaya Gordon sustained on her loss of consortium claim?

$ _____ 150 K _____ ($50,000.00)

*Your deliberations are over. Please notify the Deputy you are prepared to return to the*
*Courtroom to deliver your verdict.*

FOREPERSON

**Date: February _____ 1 _____, 2023**

3

# EXHIBIT "G"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID GORDON AND SAMAYA GORDON | : |
| Plaintiffs | : NO.: 2:22-cv-02567-MAK |
| | : |
| | : CIVIL ACTION - LAW |
| v. | : |
| LM GENERAL INSURANCE COMPANY | : |
| Defendant | : |

### OFFER OF JUDGMENT

Pursuant to Rule 68 of the Federal Rules of Civil Procedure, Defendant LM General Insurance Company ("Defendant") hereby serves an offer to allow judgment to be taken against it and in favor of Plaintiffs David Gordon and Samaya Gordon, as follows:

1.    Defendant makes this Offer of Judgment to resolve all claims in the above-captioned lawsuit made by Plaintiffs against Defendant.

2.    This Offer of Judgment is being made to Plaintiffs David Gordon and Samaya Gordon ("Plaintiffs").

3.    This Offer of Judgment is made in the interest of compromising and settling disputed matters.

4.    This Offer of Judgment shall be construed as including all claims for damages raised by Plaintiffs in the above-captioned case, including any and all statutory, contractual, extra-contractual, actual, and punitive damages, attorneys' fees, witness fees, court costs and other litigation costs.

5.    Judgment shall be entered against Defendant in the amount of Ten Thousand Dollars ($10,000.00), arising from Plaintiffs' claims against Defendant as alleged in Plaintiffs' pleadings filed in the above-captioned matter.

6.     This Offer of Judgment is made for the purposes specified in Federal Rule of Civil Procedure 68.

7.     In accordance with Rule 68, if this Offer of Judgment is not accepted by filing a written acceptance in the manner and pursuant to the time expressed in Rule 68(a) of the Federal Rules of Civil Procedure, the Offer shall be deemed withdrawn and evidence of this Offer will be inadmissible except in a proceeding to determine costs.

8.     If this Offer of Judgment is not accepted by Plaintiffs and the judgment finally obtained by Plaintiffs is not more favorable than this Offer of Judgment, Plaintiffs must pay their own costs, including their attorneys' fees, incurred after making this Offer of Judgment, as well as the Defendant's costs as allowed by the law of this District.

9.     Nothing in this Offer of Judgment shall constitute or be construed as an admission of liability by Defendant with regard to any matter at issue in this action or otherwise in dispute between the parties.

MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN

Date:   01/05/2023

BY: _____
Brigid Q. Alford, Esquire
Pa. I.D. # 38590
Christopher W. Woodward, Esquire
Pa. I.D. # 316580
100 Corporate Center Drive, Suite 201
Camp Hill, PA 17011
PH: (717) 651-3710 - FAX: (717) 651-3707
bqalford@mdwcg.com/cwwoodward@mdwcg.com
*Attorneys for Defendant LM General Insurance*
*Company*

## CERTIFICATE OF SERVICE

I, Brigid Q. Alford, Esquire, do hereby certify that a true and correct copy of the foregoing

was served upon the following via Electronic Filing System on the date specified below:

Steven M. Mezrow, Esquire
PANSINI, MEZROW & DAVIS
1525 Locust Street, 15th Floor
Philadelphia, PA 19102
*Attorneys for Plaintiffs David Gordon and Samaya Gordon*

**MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN**

Date:   01/05/2023                    BY: _____

Brigid Q. Alford, Esquire
*Attorneys for Defendant LM General Insurance
Company*