IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID GORDON AND SAMAYA GORDON | : CIVIL ACTION :  : |
| v. | : NO. 23-479 : |
| LM GENERAL INSURANCE COMPANY, | : : |

# MEMORANDUM

**KEARNEY, J.**  **April 17, 2023**

Car owners bought $100,000 in insurance to cover their medical losses if they are involved in an accident with a person who does not have sufficient insurance to pay their losses. An underinsured motorist later hit them resulting in serious physical injury. The car owners sought the full $100,000 recovery from their insurer citing their medical losses. The insurer denied their claim. The car owners sued the insurer for breach of contract, bad faith, and loss of consortium for failing to pay the $100,000 based on demonstrated medical losses. We dismissed the bad faith claim last summer without prejudice to plead facts to proceed on the bad faith claim then known to the car owners. The car owners chose not to amend based on known facts; they instead proceeded to trial on breach of contract and loss of consortium claims. The insurer offered $10,000 to settle the claims. The jury awarded a total of $660,000 in damages for breach of contract and loss of consortium.

The car owners return in a second case bringing back their bad faith theory. They claim the insurer's bad faith arose at the time of denial as now further evidenced by the insurer's litigation conduct immediately before and during trial. The car owners have two problems: bad faith claims under Pennsylvania law arise at the time of coverage denial, we already dismissed this claim last summer, and the owners chose to not amend; and, the insurer's litigation and trial conduct is not

bad faith denial under Pennsylvania's bad faith statute. We appreciate the car owners would like to recover the full extent of the jury's award. And it initially seems unfair they cannot. But they purchased a total $100,000 in coverage and convincingly persuaded the jury to find the insurer breached the contract to provide $100,000 in coverage. We have no basis under the law to give the car owners a second shot to claim bad faith denial as those claims are barred by res judicata from our earlier final order and the litigation conduct after our earlier Order is not a bad faith denial of benefits.

**I.     Alleged facts.**

David Gordon and Samaya Gordon purchased a $100,000 underinsured motorist insurance coverage from LM General Insurance to pay them for losses and injuries from a car accident negligently caused by a driver without sufficient liability insurance.[1] Mr. Gordon claimed a non-party driver crashed into his car on October 15, 2018.[2] The Gordons filed a claim in December 2018 under their LM General insurance policy alleging Mr. Gordon's medical damages entitled him to the entire $100,000 limits of his insurance coverage.[3] LM General denied the Gordons benefits.[4]

The Gordons sued LM General for breach of contract, loss of consortium, and bad faith on May 27, 2022.[5] The Gordons alleged LM General acted in bad faith supported by boilerplate legal conclusions but lacking facts about LM General's bad faith.[6] LM General moved to dismiss the bad faith claim recognizing the questions of fact in the breach of contract claim. We dismissed the Gordons' bad faith claim without prejudice as legal conclusions and the few facts pleaded did not plausibly give rise to relief.[7] We identified the kinds of pleaded facts which may suffice to plausibly infer bad faith necessary to proceed on this statutory claim. We gave the Gordons leave to amend their bad faith claim until August 5, 2022 requiring they "must at least 'allege the limited
2

facts of which they are aware, including but not limited to: the nature of the correspondence with the insurance company; details of how the negotiations, if any, proceeded; and more detailed allegations supporting claims of injury necessitating benefits.'"[8] The Gordons chose to not amend to allege these facts they would have known by August 5, 2022.

The Gordons instead elected to proceed towards trial only on their breach of contract and loss of consortium claims. LM General offered the Gordons $10,000 to settle.[9] The Gordons refused the $10,000 offer. The Gordons allege "LM General had no facts or evidence to refute" the tortfeasor "made an illegal left-hand turn in violation of the Motor Vehicle Code" and LM General failed to produce statements or take depositions of any witnesses.[10] The Gordons allege LM General waited to serve forensic expert Dr. Paul Shipkin, M.D.'s report until the last business day before trial.[11] The Gordons further allege Dr. Shipkin "mak[es] a living writing reports and testifying for defense lawyers" and "acted with clear bias . . . by ignoring [and cherry picking] undisputed relevant and critical facts concerning [Mr. Gordon's] diagnosis and treatment."[12] LM General cross-examined Dr. Shipkin in front of the jury.[13]

The jury returned a $660,000 verdict in favor of the Gordons on their breach of contract and loss of consortium claims.[14] We entered judgment on February 1, 2023 for $100,000 in favor of the Gordons recognizing the jury verdict and the policy's cap on contractual damages of $100,000.[15] Neither party appealed.

## II. Analysis

The Gordons now again sue LM General for statutory bad faith.[16] The Gordons allege their same boilerplate legal conclusions of bad faith from the first lawsuit but also now allege LM General acted in bad faith by "conducting unfair and unreasonable investigations of Plaintiffs' claims, including hiring forensic witnesses which they know are biased and will act as a bias self-interested witness on behalf of Defendant."[17] The Gordons allege LM General had a reasonable

3

basis to approve the Gordons' claim and knowingly or recklessly disregarded the claim by "lowballing" the Gordons during settlement negotiations.[18] The Gordons allege LM General refused to take the deposition of witnesses, having a "biased" expert write a report days before trial began, including the "biased" experts testimony in the trial, failing to present evidence refuting Mr. Gordon's traumatic brain injury, and failing to act in good faith.[19]

LM General moves to dismiss the Gordons' statutory bad faith claim.[20] LM General argues the doctrine of res judicata bars the Gordons' statutory bad faith claim and they do not plead sufficient facts for a statutory bad faith claim.[21] The Gordons counter they plead a factually plausible bad faith claim, their bad faith claim became ripe when the jury returned its February 1, 2023 verdict, and res judicata does not bar their claim.[22]

The Gordons' claim is barred by res judicata. Even if not barred by res judicata, the Gordons failed to sufficiently plead LM General acted in bad faith. We dismiss the Gordons' statutory bad faith claim.

The Pennsylvania General Assembly prohibits insurers from "act[ing] in bad faith toward the insured."[23] The Pennsylvania General Assembly enacted the bad faith statute "to provide a statutory remedy to an insured when the insurer denied benefits in bad faith."[24] "Bad faith on [the] part of [an] insurer is any frivolous or unfounded refusal to pay proceeds of a policy[.]"[25] A statutory bad faith claim requires the Gordons prove "(1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim."[26] Our Court of Appeals explains "[t]he essence of a bad faith claim must be the unreasonable and intentional (or reckless) denial of benefits."[27]

**A. Res judicata bars the Gordons' bad faith claim based on claim denial.**

4

LM General argues res judicata bars the Gordons' bad faith claims because "their bad faith claims accrued when LM 'initially denied' their [underinsured motorist] claims."[28] LM General contends the Gordons' failure to amend their bad faith claim after our July 28, 2022 dismissal without prejudice but granting leave to amend by August 5, 2022 in the first lawsuit bars the Gordons' claim.[29] The Gordons counter LM General never denied their claim notwithstanding their repeated sworn statements of denial. They contend res judicata does not apply to their bad faith claim because it only recently became ripe.[30] We cannot ignore the dispositive admissions of a denial of a bad faith claim which is the prerequisite of this statutory claim. The Gordons' claim is barred by res judicata.

"Res judicata, also known as claim preclusion, bars a party from initiating a second suit against the same adversary based on the same 'cause of action' as the first suit."[31] Claim preclusion bars an action when three elements are present: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action."[32] To determine whether the elements exist, we are cautioned by our Court of Appeals not to "proceed mechanically, 'but focus on the central purpose of the doctrine, to require a plaintiff to present all claims arising out of the same occurrence in a single suit. In so doing, we avoid piecemeal litigation and conserve judicial resources.'"[33] The doctrine "bars not only claims that were brought in a previous action, but also claims that could have been brought."[34]

So we need to know when the Gordons' bad faith claim became ripe. The governing Pennsylvania law confirms a bad faith claim accrues when the insurer first denies the insured benefits.[35] "[C]ontinuing denials of coverage do not give rise to separate acts of bad faith."[36] Our Court of Appeals instructs subsequent "alleged acts [of bad faith] . . . [are] related to the initial denial of coverage, not a separate act of bad faith."[37] Statutory bad faith claims become ripe when

"a plaintiff is harmed and not when the precise amount or extent of damages is determined."[38] The insured is harmed when the denial occurs. The Gordons recognized this prerequisite by pleading LM General denied their claim in their first complaint.

The Gordons' claim for bad faith accrued when LM General initially denied their insurance benefits. This denial, whether formal or de facto, must have logically occurred before their May 27, 2022 filing of their complaint when they claimed LM General breached their insurance contract by not paying the underinsured benefits and also swearing LM General *"engaged in a policy, practice and pattern to deny Plaintiffs' insurance coverage* under the policy of insurance at issue."[39] The Gordons' bad faith claim accrued before their filing of the May 27, 2022 Complaint by their own admission and under Pennsylvania law. It did not ripen when the jury reached a $660,000 verdict a few months ago. We must reject the Gordons' argument their "cause of action did not become ripe and the statute of limitations did not begin to run until the [February 1, 2023] verdict" as contrary to Pennsylvania law.[40]

The Gordons brought their initial bad faith claim on May 27, 2022.[41] We dismissed the claim without prejudice, offered guidance on the types of facts then available to be pleaded, and gave leave to amend.[42] They did not do so. The Gordons knew the information they needed to plead bad faith at the time of the first lawsuit because we specifically advised the Gordons they may plead "when they submitted a claim to LM General, how long LM General took to decide the claim, what settlement offers LM General made to the Gordons, or what amount—if any—LM General ultimately paid to settle the claim."[43] The Gordons would have known these facts at least by August 5, 2022, if not at the time they filed the first complaint last May. The Gordons chose to not amend.

6

Res judicata bars the Gordons' bad faith claim because the Gordons chose to not allege a basis for the alleged bad faith denial of their claim when afforded an opportunity to do so. They then turned around and sued LM General based on the same bad faith claim arising from the denial of benefits litigated at length with the breach of contract claim. In *Hoffman v. Nordic Natural Inc.*, our Court of Appeals affirmed Judge Wigenton's dismissal (without prejudice) became a final order for res judicata purposes when the plaintiff opted not to amend his complaint within the thirty-day timeframe given to amend.[44] Our dismissal of bad faith without prejudice became a final judgment on the merits when the Gordons failed to amend their complaint because our Court of Appeals instructs a "dismissal for failure to state a claim under Rule 12(b)(6) is a final judgment on the merits for res judicata purposes." [45] The Gordons did not amend within our given timeframe.[46] Our scrutiny confirms res judicata requires we dismiss this bad faith claim. The Gordons' bad faith claim is barred by res judicata.

**B. The Gordons fail to sufficiently plead a claim for statutory bad faith.**

The Gordons argue their claim arises from facts they learned during or shortly before our trial and months after we dismissed their bad faith claim. Those facts offer evidence of a bad faith denial. But the Gordons could not move forward even if we could find a bad faith claim can arise from conduct unrelated to denial.

Even if we found res judicata did not bar the Gordons claims, the Gordons again plead boilerplate legal conclusions lacking facts about LM General's bad faith. For example, the Gordons plead LM General "low-ball[ed]" [the Gordons]," "[f]ailed to make any reasonable offer to settle the Underinsured Motorist Claim; [p]rovid[ed] Plaintiff with no explanation or any reason for not making a reasonable offer to settle…;[f]orc[ed] Plaintiffs to litigate reasonable claims which Defendant knowingly and recklessly disregarded; [t]hreatening Plaintiffs that if they

7

litigated the case to verdict, Plaintiffs may be forced to pay Defendant's litigation costs."[47] The Gordons plead almost identical allegations in their original bad faith claim which we dismissed.[48] The Gordons continued their trend of pleading types of ways an insurer might have committed bad faith without including specifics on *how* LM General acted in bad faith. The Gordons do not allege facts about bad faith regarding the initial insurance claim denial.

The Gordons also focus their complaint on the ways LM General acted in bad faith as a legal adversary rather than an insured. We are persuaded by Judge Waldman's reasoning in *Slater v. Liberty Mutual Insurance Company*.[49] Judge Waldman denied an insured's motion for leave to amend his complaint because the insured wanted to allege the insurer acted in bad faith during the litigation process.[50] The insured alleged the insurer "withheld material documents, raised insupportable objections to discovery requests, delayed in producing discoverable material, failed to produce pertinent material within the discovery deadline and failed to produce materials within the time promised by the defense counsel."[51] Judge Waldman found the Pennsylvania General Assembly "did not contemplate a potentially endless cycle of §8371 suits, each based on alleged discovery abuses by the insurer in defending itself in the prior suit."[52] Judge Waldman also found the bad faith statute does not "provide[] a remedy for bad faith conduct by an insurer in its capacity… as a legal adversary in a lawsuit filed against it by an insured."[53]

The Superior Court of Pennsylvania in *O'Donnell ex rel. Mitro v. Allstate Insurance Company* similarly found litigation conduct is not within the scope of statutory bad faith.[54] The Superior Court held "the conduct of an insurer during the pendency of litigation may be considered as evidence of bad faith under section §8371."[55] The Superior Court also held "the [bad faith] statute clearly does not contemplate actions for bad faith based upon allegation of discovery violations."[56] The Superior Court found "if a party believes it is subject to improper discovery,

8

the Pennsylvania Rules of Civil Procedure provide an exclusive remedy whereby the aggrieved party may file a motion for a protective order."[57]

Like Judge Waldman, we agree Pennsylvania's bad faith statute does not "provide[] a remedy for bad faith conduct by an insurer in its capacity…as a legal adversary in a lawsuit filed against it by an insured."[58]

The Gordons allege LM General "never took the deposition of the Other Driver or fact witnesses," and LM General included the testimony of a biased expert who "wrote a report 'cherry picking' and failing to consider the relevant findings and opinions of the treating physicians…"[59] These claims are actions of LM General acting in bad faith as a legal adversary and not as an insurer. Like the Superior Court, we agree the Federal Rules of Civil Procedure provide the Gordons with remedies if they believed they were subject to improper discovery. The Gordons had ample opportunity to move under the Federal Rules of Civil Procedure to address discovery concerns. We dismiss the Gordons' claims because they failed to sufficiently plead bad faith.

### III. Conclusion

Res judicata bars the Gordons' bad faith claim based on the denial of their claim. The Gordons failed to sufficiently plead LM General acted in bad faith not barred by res judicata. We grant LM General's motion to dismiss.

---

[1] ECF Doc. No. 1 ¶ 2. *See* definition of "underinsured-motorist coverage," Black's Law Dictionary (11th ed. 2019), available at Westlaw.

[2] ECF Doc. No. 1 ¶ 5.

[3] *Id.* ¶ 7, 10.

---

[4] The Gordons repeatedly admitted LM General denied their underinsured motorist claim. *Id.* ¶¶ 71, 77. *See also Gordon v. LM General Ins. Co. (Gordon I)*, No. 22-2567, ECF Doc. No. 1 ¶¶ 24, 28, 31, 34.

[5] ECF Doc. No. 1 ¶ 11. LM General removed the case here. *Id.* ¶ 12.

[6] *Gordon I*, ECF Doc. No. 1 ¶ 30.

[7] *Id.* at ECF Doc. Nos. 8, 9.

[8] *Id.* at ECF Doc. No. 8 at 3.

[9] ECF Doc. No. 1 ¶15.

[10] *Id.* ¶¶ 16–17, 64–65.

[11] *Id.* at ¶ 18.

[12] *Id.* ¶¶ 20, 65.

[13] *Id.*

[14] *Id.* ¶ 24.

[15] *Gordon I*, ECF Doc. No. 58.

[16] 42 Pa. Cons.Stat. Ann. § 8371; ECF Doc. No. 1 ¶¶ 50, 83, 87-97.

[17] ECF Doc. No. 1 ¶ 83(j). Compare with *Gordon I*, ECF Doc. No. 1 ¶ 36.

[18] ECF Doc. No. 1 ¶ 77.

[19] *Id.* ¶¶ 56-70.

[20] ECF Doc. No. 6. A complaint must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer and Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility … a

defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that … 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' … in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations … and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'…, we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

---

[21] *Id.*

[22] ECF Doc. No.11 at 4,11,12,15.

[23] 42 Pa. Cons. Stat. Ann. § 8371.

[24] *O'Donnell ex rel. Mitro v. Allstate Ins. Co.*, 734 A.2d 901, 905 (Pa. Super. Ct. 1999).

[25] *Amica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 179 (3d Cir. 2011) (quoting *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. 1994) (citing Black's Law Dictionary 139 (6th ed. 1990)).

[26] *Rancosky v. Washington Nat'l Ins. Co.*, 170 A.3d 364, 377 (Pa. 2017); *Camp v. N.J. Mfrs. Ins. Co.*, No. 16-1087, 2016 WL 3181743, at *4 (E.D. Pa. June 8, 2016) (citing *Keefe v. Prudential Prop. & Cas. Ins. Co.*, 203 F.3d 218, 225 (3d Cir. 2000)).

[27] *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 506 (3d Cir. 2004).

[28] ECF Doc. No. 6-1 at 11.

[29] ECF Doc. No. 6–1 at 11.

[30] ECF Doc. No. 11 at 12.

[31] *Russomanno v. Dugan*, No. 21-2004, 2021 WL 4075790, at *2 (3d Cir. Sept. 8, 2021) (quoting *Duhaney v. Attorney Gen. of the United States*, 621 F.3d 340, 347 (3d Cir. 2010)).

---

[32] *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016) (quoting *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991)).

[33] *Davis*, 824 F.3d at 341 (quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 277 (3d Cir. 2014)).

[34] *Davis*, 824 F.3d at 342 (quoting *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008)) (emphasis added).

[35] *Am. Collision & Auto. Ctr., Inc. v. Windsor-Mt. Joy Mut. Ins. Co.*, No. 11-6947, 2012 WL 4490982, at *6 (E.D. Pa. Sept. 27, 2012). The statute of limitations for a statutory bad faith claim likewise "begins to run when coverage is initially denied." *Id.* (citing *Adamski v. Allstate Insurance Company*, 738 A.2d 1033, 1038 (Pa. Super. Ct. 1999)).

[36] *CRS Auto Parts, Inc. v. Nat'l Grange Mut. Ins. Co.*, 645 F.Supp.2d 354, 365 (E.D.Pa 2009) (citing *Adamski*, 738 A.2d 1040).

[37] *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 225 (3d Cir. 2005); *CRS Auto Parts, Inc.*, 645 F. Supp. 2d at 372 ("Under Pennsylvania law, as dictated by the Superior Court and reiterated by the Third Circuit, these acts constitute continuing denials of coverage and do not give rise to separate acts of bad faith that trigger the statute of limitations anew.").

[38] *Adamski*, 738 A.2d at 1042.

[39] *Gordon I*, ECF Doc No. 1 ¶ 24 (emphasis added). *See also* ¶¶ 28, 31, 34.

[40] ECF Doc. No. 11 at 11–12.

[41] *Id.* at ¶ 11.

[42] *Gordon I*, ECF Doc. No. 8 at 5.

[43] *Id.*

[44] *See Hoffman v. Nordic Naturals Inc.*, 837 F.3d 272, 279–80 (3d Cir. 2016).

[45] *Lewis v. Smith,* 361 F. App'x 421, 423-24 (3d Cir. 2010); *see also Matsinger v. Encompass Home & Auto Ins. Co.*, No. 12-317, 2012 WL 13018255 at *2 (E.D. Pa. Oct. 25, 2012) (citing *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981)) ("Because [plaintiff's] prior Counterclaim was dismissed pursuant to Rule 12(b)(6), it is a final judgment on the merits.").

[46] *Gordon I,* ECF Doc. No. 9.

[47] ECF Doc. No. 1 ¶ 77.

---

[48] *Gordon v. LM General Ins. Co.*, No. 22-2567, 2022 WL 2986713 at *3.

[49] *Slater v. Liberty Mut. Ins. Co.*, No.98-1711, 1999 WL 178367 at *2 (E.D. Pa. Mar. 30, 1999).

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Id.*

[54] *O'Donnell*, 734 A.2d at 907.

[55] *Id.* at 908.

[56] *Id.*

[57] *Id.* at 909.

[58] *Slater*, 1999 WL 178367 at *2.

[59] ECF Doc. No. 1 ¶¶ 64–65.